JOHN RODDY AND PATRICK RODDY, PLAINTIFFS IN ERROR, v. EDWARD, MARY, CATHERINE, FRANCIS AND ELLEN RODDY, MINORS AND INFANTS, BY THEIR NEXT FRIEND, MICHAEL RODDY, DEFENDANTS IN ERROR.

**Trust:** WHAT EVIDENCE NECESSARY TO ESTABLISH IT. In order to fasten a trust on property of any description, by means of a parol declaration, the words employed must amount to a clear and explicit declaration of trust; they must also point out with reasonable certainty the subject matter of the trust, and the person who is to take the beneficial interest. Loose and indefinite expressions and such as indicate only an incomplete and executory intention are insufficient for this purpose.

————: ————. Where a party testified that he gave money to a son for the purpose of buying land, to be held in trust by two other sons for his younger children, while his son testified that the land was bought with the joint means of father and sons, the understanding being that the title should remain in the sons, and that the father should have a home on the land; and the fact also appearing that the sons had given the father a life lease to a portion of the land, the consideration of which was the amount of his contribution to the common fund invested in the land, the sons also agreeing to pay the taxes upon the same, and the father accepted such lease and occupied the demised premises for a term of years, *held*, that the evidence was not sufficient to establish a parol declaration of trust.

THIS action was commenced in the district court of Otoe county, by the defendants in error, to enforce an alleged trust as to certain lands known as the undivided half of lot two in section twenty-nine, and thirty-two and a half acres off the west side of the south west quarter of section thirty-one, township nine, range fourteen, east, the legal title to which was in the plaintiffs in error.

The cause was tried at the September term, A. D. 1872, of the district court before Mr. Chief Justice Mason, and judgment was entered granting to the defendants in error thirty-seven and six-tenths hundredths, (.376), of the land above described, as well as a like interest (.376), in one hundred and twenty-seven and a half acres of the south west quarter of the same section. The

former tract of land had been purchased by one of the plaintiffs in error from one Compton, with money furnished by Michael Roddy, Sr., and the latter tract from one Calvert, by the joint means of two sons of Michael, and the petition in the case only alleged that a trust was declared as to the tract of land bought from the said Compton. The court below found, however, that a trust existed in favor of the minor children of Michael Roddy, Sr., to the extent of .376 of the tract of land bought from Calvert, as well as that purchased from Compton.

To reverse this judgment of the district court the cause was brought here by John and Patrick Roddy, defendants in the court below, upon petition in error. The facts fully appear in the opinion of the court.

*S. H. Calhoun* argued the cause for plaintiffs in error, on a brief prepared by himself and *John H. Croxton*, and contended that the court erred in decreeing to the defendants in error, .376 of the land bought from Compton and Calvert, when they only claimed and prayed in their petition, that the land purchased from Compton was bought in trust for them, and offered proof to establish the trust to that extent alone.

After a recital of the important facts set out in the evidence, and contending that no trust was proven, the following points and authorities were submitted.

I. The decree is contrary to law, because it grants relief which is not asked for in the petition, and is inconsistent with that demand. *Adam's Equity*, 688–89, *Note* 1. *Wilkin v. Wilkin*, 1 *Johns., Ch.* 111. *Franklin v. Osgood*, 14 *Johns*, 527. *English v. Foxall*, 2 *Peters*, 595. *McCosker v. Brady*, 1 *Barb. Ch.*, 329. *Smith v. Trenton and Delaware Falls Co.*, 3 *Green Ch.*, 505.

II. The defendants in error will not be permitted to

recover the relief granted in this case, because they have made unfounded allegations of fraud in their petition and reply, and have utterly failed to establish them. They must be confined to the relief asked in the petition, if they have proven a case to entitle them to it. *Adam's Equity*, [303], *note* 1. *Price v. Berrington*, 3 *Macn. & Gord.*, 486. *Eyre v. Potter*, 15 *Howard*, 56.

III. In an action for the recovery of real estate, the complaint must describe the real estate with reasonable certainty. *Leary v. Langsdale*, 35 *Ind.*, 74. *Macmillen v. Terrel*, 23 *Ind.*, 163. *Boxley v. Collins*, 4 *Blackf.*, 320. *Hill v. Stocking*, 6 *Hill*, 314. *Taylor's Landlord and Tenant*, *Sec.* 72, (*a*).

*I. N. Shambaugh* and *E. R. Richardson*, for defendants in error.

I. Under the testimony in the cause, we find that Michael Roddy, Sr., gave to his son, John Roddy, the money to purchase land, and the land when purchased was to be for the use and benefit of the defendants in error herein, infant children of the said Michael Roddy, Sr., and half brothers and sisters to the plaintiffs in error. John took the money and purchased land, and the deed was taken in the names of James and Patrick Roddy. As soon as John Roddy accepted the money and purchased land with it, a *trust* resulted which no act of either John or Michael Roddy, Sr., could divest these infant defendants in error of.

Trusts in real property as separate from legal ownership may be created, either by an express declaration of the trust, or it may be raised upon certain facts by implication of law. *Elliott v. Armstrong*, 2 *Blackf.*, 198. *Story's Equity Jurisprudence*, *Sec.* 1201.

Where a man buys land with the money of another the

land will be held by the grantee in trust for the person who pays the consideration.

II.   Under the evidence in the case the court below did not err in declaring a trust in favor of the defendants in error—even though John Roddy, the purchaser, took the deed in the names of his brothers, Patrick and James Roddy, instead of himself.   James afterwards conveyed his title to John and the title now is in the names of John and Patrick Roddy, the plaintiffs in error herein, and the court did not err in declaring them (the plaintiffs in error) trustees for the defendants in error. *Pugh v. Pugh,* 9 *Ind.* 132.

It was a resulting trust and can be enforced in equity, or the money could be recovered by the defendants in error. *Fausler v. Jones,* 7 *Ind.,* 277.   *McDonald v. McDonald,* 24 *Ind.,* 68.

III.   The decree is right and for the right parties. The amount of money invested in land by John Roddy for the children was $611.00—the whole amount of which was, with the money of Patrick, James and John, invested in the land purchased from Compton and Calvert. Therefore the children would be entitled to such share of the land as $611.00 is to the whole amount of money invested.   There is no error in the decree, but if there is, it is a mere clerical error which this court can modify, and if this court can, without reversing and remanding, so modify the decree or order of the court below as to do substantial justice to all parties, this court will do so—or pronounce such judgment as the court below should have done.

IV.   The plaintiffs in error seek to take advantage of a lease made by James and Patrick Roddy of the Compton place, for and during his, Michael Roddy's, natural life, for the consideration of seventy sovereigns.   This

lease was drawn seven months after the purchase of the premises, and was acknowledged a year after its date. Michael Roddy had no power to defeat the trust that had been created by his accepting the lease. As soon as the money was invested in land, and for the special purpose, as was declared, of the money paying for land for the young children, the trust was so far complete that Michael Roddy, Sr., nor the boys could defeat the trust, or bar the rights of the *cestui que trust*, by leasing or accepting a lease for the premises.

LAKE, CH. J.

The decree of the court below, in this cause, cannot be sustained. The petition even if fully supported by the evidence, would not justify a recovery as to all of the land. It is not contended that a trust was declared as to any of the land, except that portion of it known as the Compton tract, and yet the court found that one existed also as to the one hundred and twenty-seven and a-half acres purchased from one Calvert. The decree, therefore, to the extent that it affects this last mentioned tract, must be reversed as a matter of course.

We will next inquire whether the defendants in error are entitled to any relief as to the residue. The petition shows substantially that in the year 1864, Michael Roddy, the father of the defendants in error, came from Canada to this state, where the plaintiffs, his sons, had previously settled and were then living, bringing with him a small amount of money, consisting of about three hundred and eighty-five dollars in gold coin, which he at once handed over to his son John, to be by him invested in land. That shortly thereafter, on the 28th day of May, John purchased the Compton land, being the undivided half of lot two in section twenty-nine, and thirty-two and a-half acres taken from the west side of the south-west quarter

of section thirty-one, town nine, range fourteen, using therefor a portion of the funds thus intrusted to him by his father, under an agreement that he should take and hold the title in trust for the defendants in error. It is further alleged, that John in disregard of said agreement, procured the deed to be made from Compton to his brothers James and Patrick, who took the same without any consideration on their part, and with full knowledge of the rights of defendants in error. That afterwards John purchased the interest held by James and that he and Patrick now hold the legal title to the entire tract.

The plaintiffs in error, who were defendants in the court below, filed separate answers admitting the receipt of the money by John, and the purchase of the land at the time stated, but they expressly deny the trust. They allege that on the arrival of their father in Otoe county, he handed his money over to his son John for safe keeping, and after paying one hundred dollars to James, and fifty dollars to John for money advanced by them to aid him in coming to this country, requested him to invest what remained in land. That after deducting the one hundred and fifty dollars going to James and John, the residue, amounting to some four hundred dollars in currency, together with upwards of twelve hundred dollars belonging to James and Patrick, which they had also trusted to John for this purpose, was put into a common fund and used in the purchase, not only of the Compton land, but also of an adjoining tract containing something over one hundred and twenty-seven acres, bought of John Calvert; the entire cost of both pieces being sixteen hundred and twenty-five dollars.

They further allege that their father's name was not inserted in the deed by his own request; that he expressed a desire to have the deeds made to James and Patrick, with the understanding that he should have a home on the land as long as he should live. That afterwards, on

the 27th day of February, 1865, in order to carry out this understanding, James and Patrick, at John's instance, gave to their father a life lease to forty acres of the land so purchased from John Calvert, which he received as a full compliance with the agreement and understanding of all the parties at the time of the purchase; and that he still retains the same.

I have examined this record very carefully with the view of ascertaining whether it is possible to uphold the claim of the defendant in error to the Compton tract, or in fact to any portion of these lands, beyond the interest secured to him by said lease, even if the petition were properly amended so as to conform to the finding of the district court.

The defendants in error rely upon a parol declaration of trust, to which the plea of the statute of frauds might have been successfully interposed, had the plaintiffs in error seen fit to do so. In order however to fasten a trust on property of any description, by means of a parol declaration, the words employed must amount to a clear and explicit declaration of trust, they must also point out, with reasonable certainty, the subject matter of the trust, and the person who is to take the beneficial interest. Loose and indefinite expressions, and such as indicate only an incomplete and executory intention, are insufficient for this purpose. *Hill on Trustees*, 91.

Judging the testimony by this rule, I find myself entirely unable to reach a conclusion favorable to the alleged trust. James and Patrick, the immediate grantees from Compton, were not present when the purchase was made; they had intrusted the investment of their money to their brother John, in whose judgment and honesty, both they and the father, at the time, seem to have had the greatest confidence. It is certain, therefore, that they did not personally declare the trust, when they took the deed, and they could only have done so through their

agent John. But did he declare it for them? In the first place there is no testimony that he had any authority so to do, and secondly, he denies most unequivocally that he did so. But if we look to the testimony of the father alone, leaving John's emphatic denial out of the question, we are no better off. His account of the transaction is altogether too indefinite and uncertain to base an express trust upon. He says, " I gave John the money and he was to buy land with it in Otoe county for my youngest children by my second wife. He bought the place from Compton; he paid four hundred and twenty-five dollars for it. I told him to take the deed to James and Patrick in trust for my smaller children. Edward and Mary were the only ones of the plaintiffs then born. The provision was made only for Edward and Mary. Nothing was said about those that might be born afterwards."

And the witness Compton, from whom the land was purchased, called on behalf of the defendants in error swears that at the time of the purchase, " John said his father had the money to pay for it. That it was for a home for his father while he should live, then it was for his two brothers, and that was the reason the deed was made to them."

But in addition to all this, the conduct of the parties, especially that of the father, in respect to the land, throws a flood of light upon the transaction, and confirms me in the belief that it was substantially as claimed by the plaintiffs in error. They insist that the understanding was, that their father should have a home on the land, thus bought with their joint means, and this we find secured to him by a life lease to forty acres of the land, of his own selection, in which lease, the amount of his contribution to the common fund invested in the land, is given as the consideration. He is also·relieved from the burden of taxes levied upon the land, by a provision incorporated in the lease that they shall be paid by the lessors. This insures

to him the use of it, so long as he shall live, without any further charge or expense whatever. This we think corroberates very strongly the theory of plaintiffs in error in this case, and shows very satisfactorily, that in all this business, they have been very considerate and have exercised the utmost good faith towards their father. There seems to be no good reason why, at this late day, this arrangement should be disturbed.

The judgment must be reversed, and the action dismissed at the cost of the defendant in error. A special mandate will be sent to the district court to enforce this judgment.

DECREE REVERSED, AND CAUSE DISMISSED.

MR. JUSTICE GANTT, and MR. JUSTICE MAXWELL, concur.