**TRUST NOT CREATED BY DECLARATION OF AN INTENTION.**

Common Pleas Court of Hamilton County.

MINNIE GROAT v. FRANK O. WILKINSON, ADMR.

Decided, April Term, 1921.

*Statements by a Decedent as to the Proposed Gift of a Bank Deposit— Not a Sufficient Basis for Establishing a Trust in the Fund so Designated—Bar of the Statute Against an Action on an Obligation of a Decedent where not Brought Within the Eighteen Months Period.*

1. A declaration by a decedent shortly before his death that in consideration of love and affection and for services rendered he would give to G the deposit which he had in a certain designated bank, does not create a trust *in praesenti* in said fund upon which recovery may be had from his administrator.

2. An action against an administrator for recovery for such services, as amount equal to such a fund is an action on a claim or debt and is barred if not brought within eighteen months fro mthe date of the appointment and qualification of the administrator.

*Joseph T. Harrison,* for plaintiff.

*O'Connell & O'Connell* and *Jones, LeBlond, Morrissey & Terry,* for defendants.

MATTHEWS, J.

This case comes before the court upon the defendant's motion for judgment on the pleadings.

It appears from the admissions of the plaintiff, found in the pleadings, that she is seeking to recover judgment against the defendant as administrator of the estate of Robert J. Johnston, deceased; that the defendant was appointed administrator of said decedent's estate on July 25, 1917, at which time he duly qualified, and at the same time gave notice of his appointment by publication in the manner provided by law; that the plaintiff presented to the said administrator her affidavit in proof of a claim asserted in this action on the 6th day of May, 1920, and the defendant rejected it on the 7th day of May, 1920; and this action was filed on the 8th day of May, 1920. It thus appears

from the admissions in the pleadings that the claim sued upon was not presented to the administrator for more than eighteen months after his appointment and qualification, and the publication of notice of his appointment, and suit was not filed thereon within eighteen months of said appointment, qualification and publication. It also appears that the cause of action accrued upon or prior to the death of the intestate.

The ground of the defendant's motion is that upon these admissions contained in the pleadings, it appears as a matter of law that the plaintiff's cause of action is barred by the limitation contained in Section 10746, General Code, by which it is enacted that

"No executor or administrator, shall be held to answer to a suit of any creditor of the deceased unless it be commenced within eighteen months from the time of his giving bond."

This section was construed in the case of *Harris* v. *O'Connell, Admr.*, 85 O. S., 136, and the court there held that the limitation prescribed in that section applied to all matured claims owing at the death of the decedent, even though the six months period after the rejection of the claim had not expired.

Counsel for the plaintiff has urged that Section 10746, General Code, is not applicable excepting to claims against the decedent upon which a personal judgment alone might be rendered, and is entirely inapplicable to cases in which the plaintiff seeks to assert a proprietary right or title in specific property in the hands of the personal representative of the decedent.

By Section 10717, General Code, the method of probating "claims" against a decedent's estate is prescribed, and by Section 10722 is prescribed the period of six months after rejection, within which the claimant must institute action, or be forever barred; and in this section the subject matter is referred to as "a claim," and as a "debt."

In view of contention of counsel for the plaintiff, and this language of the statutes, it is pertinent to inquire how the courts have construed statutes containing similar language.

In *Fallon* v. *Butler, Exec.*,, 21 Cal., 24, the court in constru-

ing the word "claim" as used in the probate code of that state, decided as stated in the syllabus, that:

"The term 'claims' as used in the act, does not embrace mortgage liens, but has reference only to such debts or demands against the decedent as might have been enforced against him in his lifetime by personal actions for the recovery of money, and upon which only a money judgment could have been rendered."

In *Fish* v. *DeLary*, 8 S. D., 320, the court applied the reasoning of *Fallon* v. *Butler*, to a mechanic's lien, and held that the lien might be foreclosed without the claim having been previously presented to the administrator for allowance or rejection, and at pages 320 and 321, the court on this subject said:

"The primary object of the statutory provision requiring a claim against the estate of a deceased person to be presented within a specified time is to apprise the administrator and the court of the existence thereof, so that a proper and timely arrangement may be made for its payment in full, or a *pro rata* portion thereof, in the due course of administration. Like the lien of a mortgage which survives the obligor, and is enforceable by a foreclosure and sale of the incumbered property, a debt evidenced by a verified, itemized statement, of the amount due, which is secured by a mechanic's lien made of record, so that the world is charged with notice of its existence and amount, ought not to be barred and lost, so far as it affects the property subject thereto, by failure to present the claim thus secured. Without such presentation, the administrator is presumed to know of the existence of the demand, and the specific lien for its enforcement, which takes precedence, at least, over all subsequent incumbrances."

The same principle was applied in *Vandever's Administrators* v. *Freeman*, 20 Tex., 333, to a case in which the plaintiff sought to have the court declare and enforce a trust in certain real estate of which the legal title was in the decedent at the time of his death; and answering the contention of the defendant in that case the court at page 336 says:

"It is objected to this proceeding, that as a suit for land it is wrongly prosecuted in Burnett county, the land being situated in Gillespie county; and as a suit for money it must fail, be-

cause the claim was not presented to the administrators. These objections presuppose a state of case that does not exist. For the suit is not for the recovery of the land, or for the recovery of a claim against the estate of Vandever, but it is to quiet the title by a cancellation of the deed if practicable, or to trace a trust from land to money through the estate; which it is competent for a court of equity to do.''

The Supreme Court of Alabama, in *Hood, Admr.,* v. *Hammond,* 128 Ala., 569, held that a vendor's lien on land could be foreclosed notwithstanding the fact that the purchase money notes had not been presented to the vendee's administrator, and were therefore barred as personal claims against the decedent's estate, holding as stated in the syllabus:

"The failure of a vendor to present notes given by his vendee for the purchase money of land, to the latter's administrator within the time required by the statute of non-claim, or to file such notes in the probate court within nine months after the declaration of insolvency of the vendee's estate, does not destroy the vendor's lien or cut off all remedy for its enforcement.''

And discussing at page 578 the effect of the failure to present the notes to the administrator, the court says:

"Such failures would only operate to bar the right of the vendor to participate in the distribution of the estate.''

In *Franklin* v. *Trickey,* 9 Ariz., 282; 11 Ann. Cases, 1105, it was held that the right of a deceased partner's administrator in the partnership assets, need not be filed with the administrator of the other partner before filing suit to recover the proportion of the partnership assets.

And the same principle was applied in our own state in the case of *Ambrose, Admr.,* v. *Byrne, Exec.,* 61 O. S., 146, to the enforcement of a judgment lien, the court deciding as stated in the syllabus that:

"1. Where a judgment is a subsisting lien on the lands of the debtor at the time of his death, it is not necessary thereafter to issue execution upon it in order to preserve the lien. It is entitled to share in the proceeds of the land, when sold

by the personal representative, according to its priority at the time of the debtor's death, although execution be not issued thereon within five years from its rendition or the date of the last execution.

"2. The allowance of the claim by the personal representative, or its presentation to him for that purpose, is not requisite to the judgment creditor's right to share in the fund."

From these authorities it would seem to the court that the statutes of Ohio prescribing that "claims" must be presented to the personal representative, and where the "debt" is due at the time of the death of the decedent, the suit must be filed thereon within eighteen months of the appointment, qualification, publication of notice of appointment, and also within six months of the rejection of the claim, must be limited according to their terms to personal obligations of the decedent, and have no application to a case in which a plaintiff seeks to assert title, legal or equitable, in specific property in the hands of a personal representative.

It therefore becomes necessary to consider the allegations of the petition in the light of the authorities, to determine the character of the cause of action which the plaintiff is seeking to enforce.

In the petition are stated facts showing that the plaintiff rendered certain services to the decedent, and that is followed by these allegations:

"That in consideration of love and affection and her said work and labor, for him and his said wife, and upon numerous occasions prior to the said death of Robert J. Johnston, he promised that upon the happening of his death, the plaintiff should become the owner of all the assets of his estate; that prior to the death of his said wife, she said in his presence that at their death (meaning the deaths of herself and husband) they would leave a 'Nest Egg' for her (meaning this plaintiff); that on Saturday, June 30, 1917, shortly before he died, and when he came to plaintiff's home, he promised and said, 'Minnie that Nest Egg that "Auntie" (meaning his deceased wife) and I told you about, I have provided for you, and it is on deposit in the Evanston Bank,' meaning the bank of that name in the city of Cincinnati, Ohio.

"Plaintiff says that at the time of the death of said decedent

there was on deposit in said Evanston Bank the sum of $1,300 in the name of said Robert J. Johnston, deceased, and is the same so promised and agreed by him should be paid to plaintiff upon the death of said decedent.''

Following the quoted language is an allegation of the presentation of proof of claim, and the prayer is for ''judgment in her favor in the sum of $1,300 with interest from July 21, 1917.''

From these allegations does it appear that the plaintiff is asserting some title, legal or equitable, in a *res* in the hands of the defendant, or does it appear that the plaintiff is seeking to enforce a personal obligation of the decedent against his estate, upon which if successful, she would be entitled to a *pro rata* distribution as one of the creditors of the estate?

Counsel for plaintiff relies confidently upon the case of *Gemin* v. *Salisbury, Admr.,* decided by the Montgomery county common pleas court, and reported in the O. L. R. of March 29, 1920.

In the opinion of the court, however, that decision is not applicable to the allegations contained in the plaintiff's petition. It was claimed in that case that the plaintiff was asserting a title to a trust fund, and that therefore it was not necessary to present the claim for allowance to the personal representative, but there also appeared in that case the additional circumstances that the $2,000 which plaintiff claimed had been segregated by the decedent and made a trust fund for her, had been withheld from the administrator because of litigation, and had just recently been paid to the administrator, and it was argued that said sum constituted assets coming into the hands of the personal representative, which under favor of Section 10747, were available to creditors notwithstanding the expiration of a greater period than eighteen months. And the court after reviewing the authorities, and construing the Ohio statutes, reached the conclusion that the plaintiff's claim considered as a personal obligation of the decedent, had been presented in due time for the purpose of participating in the assets that had just come into the hands of the administrator. That the decision of the case was predicated upon that conclusion of the court is ex-

pressly stated in the court's opinion, at page 329, in this language:

"For the purpose of this decision, the court will only consider one question raised by the pleadings, and that is, whether or not the $2,000 in the manner in which it came into the hands of the defendant, is or is not in fact new assets."

The court, therefore, does not regard the case of *Gemin* v. *Salisbury, Admr.*, as in any way controlling this case, for the reason that there is no allegation that additional assets came into the hands of the defendant in this case, after the expiration of eighteen months. The plaintiff must therefore recover, if at all, upon the theory that during the lifetime of the decedent he divested himself of the equitable title to the deposit of $1,300 in the Evanston Bank, and invested the plaintiff with that equitable title or lien.

It is claimed that because the decedent was indebted to the plaintiff, and that in view of that indebtedness, the decedent made the statement with reference to the deposit in the Evanston Bank, that a court of equity upon equitable principles, will give a remedy to the plaintiff as though a trust or lien had been created, notwithstanding the fact that language had been used, which in the absence of consideration would not have had the effect of severing the legal and equitable title and creating a trust, or giving a lien.

The distinction between expressions of donation and declarations of trusts is clearly stated in *Flanders* v. *Blandy*, 45 O. S., 108. At page 115 the court says:

"If a gift is imperfect at law, and for want of consideration can not therefore be enforced, a court of equity will not aid the donee by construing it into a declaration of trust. *In Milroy* v. *Lord*, 4 De Gex. F. & J., 264, in referring to the modes of making a voluntary settlement, the principle is announced that if the settlement is intended to take effect by transfer, the court will not hold the intended transfer to operate as a declaration of trust, for then every imperfect instrument would be made effectual by being converted into a perfect trust. The owner of property that is meant to be donated, may at the last moment before delivering it change his mind, and in such case equity

will not virtually divest him of his property by creating a trust in favor of a volunteer.''

Where the situation shows that a consideration exists for the creation of a trust, that is, where as in this case the prior relation of debtor and creditor existed, it is clear that if the debtor intended, and used appropriate language to express the intent to change the relation of debtor and creditor into the relation of trustee and *cestui que trust* as to specifically designated property, or to give a lien upon said property, then a court of equity would decree a specific performance of the contract to create the trust or lien, in the event the trust or lien was not entirely created by the contract itself, and would in addition to that afford to the *cestui que trust* the remedy of having the trust declared and enforced in his favor or the lien foreclosed. But before a court of equity can furnish these remedies, and before a contract upon consideration can have the effect of severing the legal and equitable titles it must appear from the contract itself that such was the intention of the parties; and for the purpose of determining the intention of the parties in the use of language, it does not seem to the court that there is any material distinction between the cases in which trusts have been voluntarily created, and those in which there was a consideration therefor.

In the case of *Sullivan* v. *Sullivan*, 56 N. Y. Supp., 693, it was sought to enforce as a voluntary declaration of trust, a certificate of deposit evidencing a fund deposited in a bank by a decedent, the language of the certificate being:

"Chemung Canal Bank.    Elmira, N. Y., Oct. 10, 1892.

"Catherine Sullivan has deposited in this bank two thousand dollars, payable one day after date to the order of herself, or, in case of her death, to her niece, Catherine Sullivan, of Utica, upon return of this certificate, with interest at three per cent. per annum, if held six months.    Not subject to check.''

The court reviewed a great many cases, and among other things said, at page 695:

"Such deposit created the relation of creditor and debtor between the depositor and the bank. The fund remained the property and under the absolute control of the former. To have the effect of creating a trust in favor of the defendant, the contract between Mrs. Sullivan and the bank should, at the time of its execution, have divested the former of title to the fund, or of some interest therein, and vested such interest in the defendant. Such was not the effect of the certificate. The clause in the certificate for the benefit of the defendant could not take effect until after the death of Mrs. Sullivan. The latter did not divest herself of control over the fund during her lifetime. She could use it or withdraw it. She did not, by her contract with the bank, divest herself of the possession, absolute control, or title to said fund. To create a valid trust in favor of the defendant, the certificate should have given to her, or a trustee for her, a vested interest in the deposit, created at the time—a title to the deposit, or of some interest therein. As it was, such interest as was attempted to be given to the defendant under the certificate was only to take effect after the death of the donor, and hence was testamentary in its character."

Applying the foregoing rule to the language used by the decedent as alleged in the petition, it is clear that the decedent did not divest himself of any title to the deposit; that the deposit remained in the bank all the time under the absolute control of the decedent, and that under the language used it was not the intention of the decedent to transfer immediately an interest to the plaintiff in the fund, but that it expressed only a purpose or expectation to have that sum of money devolve upon the plaintiff upon the death of the declarent. That such statements can not be considered to be declarations of trust, was held in the case of *Clay* v. *Layton*, 134 Mich., 317. The second paragraph of the syllabus is:

"Statements by a person retaining possession of his property, that he has disposed of it in the way he wants it to go, do not amount to a declaration of a trust, as they are as consistent with the idea that he has made a will as that he is holding the property as a trustee."

In that case the decedent had reduced to writing the man-

ner of disposition of his property, but had not made any actual distribution of the papers or property, and the court held that there was nothing in his acts or instructions which "indicates an intention that effect shall be given to the papers before his death."

The mere fact that there is a consideration is not the only element necesssary to invoke the jurisdiction of a court of equity to enforce a trust. Where the trust is voluntary the language must show an intention to create the trust *in praescnti.* Where there is a consideration, it is not sufficient to show that there was a contract based upon that consideration, but it must likewise be shown that the contract was to *create a trust in praesenti.* This is stated in *Dennison* v. *Goehring,* 7 Pa. S., 175, at 178, where the court say:

"But is it true that equity will not enforce an executory trust in favor of a volunteer? It will doubtless not enforce a contract *to create* a trust, though it were under hand and seal; and in this respect it carries the doctrine of *nudum pactum* further than even the law does; but the difference between a covenant to *create* a trust and a trust *created,* is as wide as the difference between a covenant to convey and a conveyance executed."

The case of *Donohoe* v. *Conrahy,* 2 Jones & L., 688, is one in which the plaintiff sought to enforce what she alleged to be a trust founded upon consideration, but the court after analyzing the evidence found that there was no contract to create a trust, and on page 695 summarized its deductions from the evidence as follows:

"No promise is either alleged or proved in this case; for the evidence amounts only to a statement of what may amount to an admission of an intention, on the part of the lessee, that these persons should have the same benefit of the lease to him, which they had before."

In the case of *Hamer* v. *Sidway,* 124 N. Y., 538, there was a consideration for the declaration of trust in that the relation of debtor and creditor existed between the parties, but notwith-

standing that the court analyzed the evidence carefully to determine whether in what was said by the debtor to the creditor, and the creditor's response thereto, an agreement had been entered into between them to transform the relation of debtor and creditor into the relation of trustee and *cestui que trust* of specifically identified property. The discussion of this subject by the court will be found on pages 549, 550, 551, and is instructive in showing the difference between that case and the one stated in the petition in the case at bar.

In *Cook & Co.* v. *Black,* 54 Iowa, 693, the Supreme Court of Iowa applied the law to facts very similar to those alleged in the petition in this case, and held as stated in the syllabus that:

"The fact that a decedent in his lifetime had frequently declared his intention to pay certain indebtedness to the plaintiffs from the proceeds of a number of cattle owned by him was held insufficient to create a lien in favor of the plaintiffs upon the fund arising from the sale of the cattle by the executors."

In that case as in this the relation of debtor and creditor existed between the claimant and the decedent, the latter declared his purpose to pay the indebtedness out of specific property, and the court held as stated in the syllabus that the claimant thereby acquired no title in the specific property.

Analyzing the allegations of the petition in the light of these authorities, it does not appear that the decedent intended to invest the plaintiff with the title to the deposit in the Evanston Bank, but on the contrary it appears that he retained absolute control of that deposit during his lifetime, and that this intention of control was in harmony with the language he and his wife used in referring to the deposit, in conversation with the plaintiff. The language used only showed that they at that time had a purpose or intention to make some sort of an arrangement whereby upon the death of the decedent she should have the bank deposit; that language is entirely consistent with the intention to make a will containing such a disposition of the bank deposit. Furthermore there is no allegation that the plaintiff agreed to a change in the relation of debtor and creditor to that

of trustee and *cestui que trust,* and that relation could not be so changed without her agreement thereto.

It is a rule in Ohio that the degree of proof required in cases of this sort, is that it must be established by clear and convincing evidence. *Merrick* v. *Ditzler,* 91 O. S., 256 at 261.

If such degree of proof is required, then it is clearly the rule that the expression necesary to create a trust must be clear, convincing and unambiguous, and it has been so decided. *Roddy* v. *Roddy,* 3 Neb., 96.

For these reasons the court is of opinion that the cause of action set forth in the plaintiff's petition is one seeking to enforce a personal obligation of the decedent, and is not one seeking to assert a title to specific property in the hands of the administrator. While pleader's prayer is not conclusive in determining the character of the action, it is to be noted that the prayer of the petition in this case only seeks a judgment for money, and does not seek to have the plaintiff's title to any property declared and enforced. Even though a trust relation previously existed between the decedent and the plaintiff, if that trust relation no longer existed, or for any reason was not relied upon, and the only relief sought was the enforcement of a personal obligation against the decedent's estate, the cause of action would be a claim or debt, which under the statute must be proven, and suit filed within the time prescribed. See *Robson* v. *Evans,* 3 Ohio App., 248.

The motion for judgment on the pleadings is granted.