CHARLES P. BRATT, APPELLANT, v. JOSEPH S. WISHART, ADMINISTRATOR, ET AL., APPELLEES.

FILED NOVEMBER 16, 1934. No. 29007.

*Hall, Cline & Williams, Wilmer B. Comstock* and *John H. Comstock,* for appellant.

*Paul F. Good* and *Joseph S. Wishart, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and YEAGER, District Judge.

GOSS, C. J.

Plaintiff appeals from the refusal of the district court to declare a trust against a farm, left by John P. Bratt, now deceased, upon which plaintiff had made improvements. He asked a lien for their value.

John P. Bratt owned in Lancaster county a 240-acre farm without any buildings on it, but upon which plaintiff had erected buildings and made other improvements. He died intestate on April 25, 1930, leaving as his sole heirs his widow, Mary E. Bratt, and his daughter, Lourene Wishart. Joseph S. Wishart, husband of the daughter, was duly appointed administrator. These three are the only defendants.

Plaintiff was a nephew of deceased. The petition alleged that in 1919 he desired to engage in farming and to acquire and own a farm; that deceased desired to assist him in that purpose and so they mutually and orally agreed that plaintiff should occupy the farm and should construct thereon such improvements as were convenient and necessary, it being agreed that the occupancy should continue until the oral agreement should be terminated by mutual consent or until plaintiff became convinced that he could make a success of the business of farming and could buy the real estate; that plaintiff entered into possession under the oral agreement and on or about 1919 built a house, barn, corn crib, hog house, chicken house and fences, dug wells and planted nursery stock, all of which were paid for by plaintiff at a total cost, itemized in the petition, of $10,261.79; that it was further originally

agreed that, if for any reason it was later mutually agreed that plaintiff should vacate, John P. Bratt would take over the improvements and pay plaintiff the cost thereof with lawful interest, the same to be paid when deceased should sell the land; that in 1922 it was further orally and mutually agreed that plaintiff would surrender possession and that John P. Bratt would take possession and use the improvements until such time as he should sell the real estate, when he would pay plaintiff the sum of $10,261.79, together with a reasonable rental for the use of the improvements from 1922 until the sale should be made; that the reasonable rental value of the improvements was $400 a year; that on May 8, 1928, John P. Bratt made and executed a memorandum as follows:

"The 240 acres in sec. 9-8-8, should never be sold for less than $150 per acre, plus $5,000 or $6,000 for the improvements and should bring $200 or more per acre before many years.

"When this land is sold I want it sold plus the improvements and the amt the improvements bring to be paid to Charles P. Bratt, who built them.

"May 8-26.                          John P. Bratt,
                                         "1501 C St."

Plaintiff alleges that the quoted memorandum was written by the hand of John P. Bratt and was found among his papers after his death; that from July, 1922, to April 14, 1930, plaintiff carried insurance in his own name upon the improvements, but on said date John P. Bratt, or some one in his name, caused the insurance to be canceled, insured the buildings in the name of John P. Bratt, asserted absolute title in John P. Bratt, converted the use and sought to deprive plaintiff of all ownership and interest therein; that the facts of the cancelation of the insurance, the conversion of the improvements and assertion of title were not discovered by plaintiff until about January 8, 1931. Plaintiff alleges, by reason of the facts, the relationship of trustee and *cestui que trust* between John P. Bratt and plaintiff.

Plaintiff prays that the trust be declared against the widow and daughter of John P. Bratt, personally, for all improvements placed upon the real estate by plaintiff; and that the court decree the value of the improvements and the reasonable value of the rental for the use thereof since 1922 to be a lien upon the real estate.

Defendants pleaded the four years' statute of limitations, referring to sections 20-206 and 20-207, Comp. St. 1929; pleaded that, under the statute of frauds, to wit, under sections 36-103 and 36-105, Comp. St. 1929, the claim of plaintiff is not enforceable for the reason that the claim is not in writing nor claimed to be based upon any instrument in writing; pleaded that the purported restraint upon alienation created by the memorandum of May 8, 1926, heretofore quoted, is wholly void; pleaded that the instrument was not executed in accordance with the statute relating to wills (Comp. St. 1929, sec. 30-205), is not entitled to probate, has not been offered for probate, and is wholly void and of no effect.

The evidence shows that in 1919 and 1920 plaintiff went into possession of the farm and erected thereon and paid for improvements substantially of the character and cost alleged in his petition; and that in 1922 he surrendered possession of the farm to John P. Bratt, who at all times held the record title and who died intestate on April 25, 1930, leaving his wife and daughter as his only heirs. Whatever agreement or agreements there were between them at the inception of their dealings in the matter, at the time plaintiff left the farm or at any other time, were oral. Out of this situation arise the main elements and difficulties of this unhappy controversy.

Plaintiff was not allowed to testify that he went on the land with an understanding that, if he could handle the proposition, John P. Bratt would enter into a written agreement, selling the land to him at $175 an acre; was not permitted to testify that in 1922, when he gave up possession, and subsequently on other occasions, John P. Bratt orally agreed that plaintiff had spent more than

$10,000 in the improvements and would be paid when the land was sold. This testimony was excluded under section 20-1202, Comp. St. 1929, which provides: "No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness, unless" (specifying exceptions). No exception named in the rest of the statute is present. Plaintiff's testimony on this subject was properly excluded.

Likewise, Loretta Bratt, wife of plaintiff, was not allowed to present her duly offered testimony as to conversations with John P. Bratt. She was permitted to state that, before her husband began the erection of the buildings, she was present with him at John P. Bratt's home in Lincoln, when plaintiff and John P. Bratt had a conversation in reference to "erection of buildings on this land" and also "in reference to Charles and his family purchasing this land;" but she was not allowed to state the conversation, the court sustaining an objection by defendants that the witness had a direct legal interest in the outcome of the suit and the adverse parties are the legal representatives of the deceased. So, also, questions asked Loretta Bratt, involving several later conversations with John P. Bratt, relating to payment for the improvements, one as late as Thanksgiving time in 1929, were not permitted to be answered by her on similar objections. These rulings are assigned as erroneous.

The purpose of the questions asked Loretta Bratt was not to show a right in Charles P. Bratt to any present title resulting from a purchase of the property. All parties seem to agree that he surrendered the real estate in 1922. On no theory of the pleadings or evidence can he be said to claim the title. What he was seeking was to show the whole history out of which he claims John P. Bratt became the trustee of the fund expended for improvements upon the farm and liable to account for it to him as the beneficiary. The avowed purpose of this suit,

as shown by the pleadings and particularly by the prayer, is to have a lien decreed against the land in favor of plaintiff. Nowhere does the evidence show that Loretta Bratt had any financial interest in the expenditure for the improvements. She has no dower interest in any lien that might be found in favor of her husband, which is evidently the theory upon which defendants objected and the court thought she had a "direct legal interest" in the result of the action. No title to real estate, homestead or otherwise, was involved. The fruits of the suit, if any, would be the separate property of the husband. We are not called upon to decide, and do not decide, whether a wife has such an inchoate interest by dower, or otherwise, in her husband's separate real estate as can be divested only by her conveyance, because that question is not presented by the facts.

We are of the opinion that the court erred in excluding her testimony as to every conversation with John P. Bratt offered relating to the building of the improvements and the manner in which John P. Bratt took them over, held them, and intended to reimburse her husband for them.

But, quite aside from her testimony, we think there is ample evidence to show that John P. Bratt held, and intended to hold, the improvements from the time Charles P. Bratt surrendered the farm in 1922 in trust for Charles P. Bratt. There is in evidence his own written memorandum (quoted in the statement of the pleadings) that Charles had built the improvements, that he wanted the land sold for a certain minimum price an acre "plus $5,000 or $6,000 for the improvements" and the amount paid to Charles P. Bratt. In view of all the circumstances in evidence, this memorandum seems to indicate that he considered himself as holding the improvements in trust for Charles P. Bratt and that he intended that Charles P. Bratt should be paid $5,000 or $6,000 for them out of the proceeds of the sale of the land. It was a voluntary declaration on his part that they were worth that much or

that there was that much of their original cost or agreed value unpaid for.

Among the circumstances in evidence corroborative of the trust theory are the following: (1) O. M. York testified that he rented the land after Charles P. Bratt left it in 1922. He wanted a lease for more than a year, but John P. Bratt told him that Charley had put over $10,000 in improvements on the place and he would not lease it for more than a year because "the place was for sale so that Charley could get his money out of the improvements, and he could get his out of the land;" (2) John R. Wood, a farmer, who was engaged in selling land since 1918, testified that, in the fall of 1922, Mr. Bratt asked him to sell the farm for $200 an acre. When the witness said that was too high, Mr. Bratt said he thought he would have to get that much because "Charley has got about $10,000 worth of improvements there;" (3) Reuben Conn, acquainted with John P. Bratt, had two conversations with him in which he said that Charles should have his money back for the buildings.

The funds put into the improvements by Charles P. Bratt augmented the value of the real estate and they are still there. Fair dealing and equity imperatively demand that Charles P. Bratt should be paid for them. We think we might, under such evidence as was permitted to be introduced, find a trust for $5,000 or $6,000—possibly only the smaller amount—by reason of the evidence left in the memorandum of John P. Bratt, aided by other testimony and circumstances. But we think that not only this memorandum but the evidence excluded by the court should be considered in order to give fair recompense to plaintiff for his expenditures upon the land.

For the reasons stated, the judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED.