FRANCES MACA ET AL., APPELLEES, V. JOSEPH L. SABATA
ET AL., APPELLANTS.

34 N. W. 2d 267

Filed October 7, 1948.   No. 32378.

*F. H. Mize,* for appellants.

*Coufal & Shaw,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-
MORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

This is an action in equity arising out of the fact that
a mother conveyed land to two sons on their agreement
that on her death they would pay the purchase price
in equal shares to her ten children.   One son carried out
his part of the agreement, and suit was brought against
the other son and his wife, who are the only defendants.

(213)

In legal terminology, it is an action by third party donee beneficiaries against the promisor to recover upon his promise made to the promisee for the benefit of said third party beneficiaries. ·The court found for plaintiffs and entered judgment against defendants, who appealed.

A petition in equity was filed August 23, 1945, to which answers were filed by defendants, having attached thereto certain exhibits. On the same day a reply was filed in the form· of a general denial. The case thereupon went to trial in September of 1946, in which month evidence was taken on a number of days. Other evidence was taken as late as April 1947, it appearing that adjournments were had for the ·convenience of the court, the parties, and the witnesses, and the evidence is found in the two volumes of the bill of exceptions.

This action involves only the members of one pioneer family of industrious people, of very little schooling, and who always spoke the Czech language with their parents and probably in their homes. Some of the witnesses required an interpreter. This language difficulty accounted for and justified the court in overruling objections to many leading questions asked by plaintiffs' attorneys.

The family involved in this suit consisted of five sons, to wit, Frank, Charley, Anton, Vaclav· (James), and Joseph, and five daughters, Mary Kominek, Mollie Kozisek, Frances Maca, Sophia Styskal, and Stazie Svoboda. The sons and two daughters testified. Two daughters were dead. Mary Kominek died in November 1941. She left surviving her ten children, and two grandchildren who were the sons of a daughter who predeceased her. Mollie Kozisek died March 8, 1941, leaving her husband and two sons. The husband, John Kozisek, was named as special administrator of his wife's estate. A son of Mary Kominek, Bohumil Kominek, was special administrator of the estate of his mother. The plaintiffs are Frances Maca, Charley Sabata, the

two special administrators, the husband and children of Mollie Kozisek, and the children and grandchildren of Mary Kominek. The defendants are the son Joseph L. Sabata and his wife, Otylie Sabata.

The record shows that, after the oral evidence had been taken and both sides had rested, the plaintiffs asked leave to file an amended petition to conform to the evidence, and tendered such amended petition to the court. Objections were made by the defendants on the ground that the amended petition did not reflect the evidence correctly, raised new issues, and questioned the mental soundness of the decedent, Cecelia Sabata. It was charged that plaintiffs had changed the relief for which they prayed and had also changed the entire theory of the case.

The court overruled the objections and allowed the amended petition, with paragraph 12 omitted, to be filed. Thereupon the defendants asked leave to refile their original answer as an answer to the amended petition, with certain additional amendments to five paragraphs and with leave to strike out certain words. The plaintiffs objected to the application for amendment of certain paragraphs for the reason that said paragraphs did not tend to support or conform to the evidence and contained conclusions of law, and that said amended paragraphs did not constitute any defense to the plaintiffs' action. The objection of plaintiffs was overruled by the court and leave was granted to defendants to refile their original answer, with the additional amendments and changes allowed by the court. Plaintiffs were granted leave to refile their reply to the answer as amended. Defendants were allowed to refile the demurrer filed to the original answer, and said refiled demurrer was thereupon overruled. Thereupon the defendants were allowed to take the oral evidence of James Sabata, the son of Joseph Sabata, and to recall for further examination Frank Sabata, Sr., C. M. Hamaleh, and Otylie Sabata, who were cross-examined, and the parties again rested.

The amended petition alleged: That Josef Sabata died intestate in 1921, leaving land in Butler County, and leaving his widow, Cecelia, and ten children, five sons and five daughters; that the widow inherited one-third of the real estate and each of the children one-fifteenth thereof, but that by some arrangement between them the children conveyed 80 acres of the land to their mother, Cecelia, in fee simple; that the mother sold and conveyed the said 80 acres to two of her sons, Anton and Joseph, for an unpaid purchase price of $6,000, each giving a note for $3,000, bearing 4 percent interest, with the agreement and understanding that they would pay the mother only the 4 percent interest during her lifetime upon said $6,000 and that on her death the entire principal sum of $6,000 would be paid by the grantees in equal shares to said ten children; and that such agreement was approved by all of the plaintiffs in 1922.

It was further alleged in the amended petition that defendant Joseph L. Sabata repudiated any obligation to pay anyone except the mother, who sold him the 40 acres of land for $3,000. The plaintiffs prayed that the court find that none of the funds had been paid to the beneficiaries to whom defendant Joseph Sabata agreed to pay said $3,000, and that a judgment be entered against him in the sum of $2,400.

Defendant Joseph Sabata by his amended answer denied each and every allegation of the amended petition, except that he admitted that his mother sold the 80-acre tract to his brother Anton and himself for $6,000. He further alleged that he made partial payment on his note until the same was reduced to $1,000, as admitted by the mother in her writing, copy of which is attached to the amended answer as an exhibit.

This defendant alleged that he continued to make further payments to his mother by paying her doctor bills, medical expenses, insurance dues, church dues, expense of her last illness, and provided her with nursing and care in his own home for the last two months of

her life, and such expenses amounted to more in cash value than the balance remaining unpaid on the last $1,000 note which he had given to her. He charged that the alleged agreements are in violation of the statute of frauds, and an attempt to create an interest in land, contrary to the provisions of said statute, and such alleged agreement is therefore void. He further charged that said agreements and understandings are testamentary in character and not in writing, are contrary to the provisions of the statute providing for the execution of wills, and are therefore void, and further are barred by the statute of limitations.

The judgment and decree entered by the trial court, after describing the land and the relationship of all the parties, found that the mother sold and conveyed the 80 acres to her sons Anton and Joseph on December 27, 1921; and that the sons agreed, in consideration of said conveyance to them by their mother, that on her death they would pay $6,000 in equal shares to her ten children, each son to pay one-half thereof, and that in addition each of the sons would pay the mother interest at 4 percent on $3,000 of said purchase price during the term of her natural life.

The court found in its decree that Anton Sabata had fully performed his part of said agreement by making the payments which he was obligated to make by his promise to his mother. The court then found that defendant Joseph Sabata performed his promise to his mother to pay her interest only in part; that he had failed and refused to pay any part of the $3,000 due his brothers and sisters; that a one-fifth portion of said $3,000 would be payable to himself; and that the remainder of $2,400 should be paid $600 each to Frances Maca, Charley Sabata, John Kozisek as special administrator of the estate of Mollie Kozisek, deceased, and to Bohumil Kominek, as special administrator of the estate of Mary Kominek, deceased, with interest at 6 percent from October 3, 1942. Each of the plaintiffs last

named was awarded a lien to secure the amount of such judgment upon the land belonging to the defendants and to pay the costs of the action.

We will first consider the written statement signed by the mother, and which is discussed at length in each of the briefs. This defendants' exhibit A, written in the Bohemian language, was attached to defendants' answer, together with exhibit B, a translation thereof made by County Judge Hranac, and the exhibits were offered in evidence and refused admission by the court, and proper exceptions were taken to such ruling by the defendants.

This exhibit A consists of three pages written on sheets from a lead-pencil tablet, and the translation, exhibit B, shows it was written June 27, 1942, and signed by the mother, Cecelia. In this statement the mother cuts off the children of her two deceased daughters with five dollars to each family. The important statement as translated therein is: "$1200 is at the postoffice, Joseph will put there one thousand and I with him will be settled that now with him I have nothing." The defendants insist that this writing, signed by the mother, saying that the defendant Joseph must only pay $1,000, is presumptive evidence against the interest of the person making the statement and should have been received in evidence, as it complies with section 25-1221, R. S. 1943. Defendants cite Bratt v. Wishart, 127 Neb. 836, 257 N. W. 258, and the annotation to 96 A. L. R. 686. See, also, Bratt v. Wishart, 136 Neb. 899, 287 N. W. 769.

The plaintiffs argue that this exhibit A was drafted only three months before the mother's death. At that time she was 87 years old, senile, and had been taking sleeping powders regularly for two years. The evidence shows that at times she did not recognize her own children, even long before this exhibit A was written. It is charged that the words were put in her mouth by Joseph. It is written in exhibit A that there was $1,200 postal savings, when it is claimed that the fund had

been cashed six months before. The facts set out in exhibit A do not agree with other competent evidence that Anton had made all his payments under his agreement, while exhibit A seeks to place a liability on Anton of $1,000.

Evidence contradictory to exhibit A is found in the old lady's statements made the year before, according to Stazie Svoboda, who testified that she lived a quarter of a mile from the old home place, where her mother lived until December 1941. She said she had been doctoring for about four years and was really a sick woman. During the four years Stazie went to see her mother every day unless she knew that somebody else had been there. "I had to take care of her. She had a sore back and had to be dressed every day. I went there to bring her cobs and water and to see what she needed. If she would feel good, I went back, but sometimes I had to stay there overnight." Her sisters also went there, Mrs. Frances Maca the most often. "Q Now, during this time that you were taking care of her over those four years, was she taken to the doctor? A Well, yes, at the beginning, kinda, we had to take her to the doctor to kinda know what was wrong with her. It was pretty hard for her. I just talked to the doctor and would tell him how she was and he gave different treatments."

She testified that her mother told her of the sale of the 80 acres. "Q What did she say to you about it? * * * A Well, she kinda told me that she sold it; wasn't renting it anymore; don't own it anymore; she said that she sell it. Q Did she tell you on what terms? A Seventy-five dollars an acre. That amounted to six thousand. Q What more did she say about the sale and about how the money was to be paid? * * * A That she sold it to the boys, Anton and Joe. Q And how were they to pay? A After she died they should divide the money equally between us children; six hundred to each of us. And she said they are going to pay her while she was living, four percent; and out of

that four percent she can live and use that money."
She said that Anton paid his interest.

Without setting out additional evidence, we find that
exhibit A was admissible, and as the matter is here
for consideration de novo we find that, when exhibit A
is considered with all the other evidence, it is not suffi-
cient to overcome the competent evidence in direct op-
position thereto.

The defendants assigned as error the finding of the
court that the alleged oral contract was binding on
defendants after they had given their promissory note
in full payment of the purchase price. We are cited
by them to Cameron v. Nelson, 57 Neb. 381, 77 N. W.
771, which holds that when the entire interest is con-
veyed by warranty deed a contemporaneous oral agree-
ment cannot be enforced. However, we find that the
facts in the case cited are not the same as in the case
at bar.

We find the case of Fox v. Fox, 77 Neb. 601, 110 N.
W. 304, much more in point, for in that Butler County
case Thomas Fox had three sons and five daughters
and divided his land of 800 acres between his sons and
required the sons to pay their five sisters $1,500 apiece.
Three daughters received their shares from the sons
William and John, but the third son, Michael, died and
a sister attempted to charge his estate with $1,500 still
due her. Thomas Fox, still living, was the principal
witness for the claimant. She lost in county court, but
won in the district court, and this court affirmed such
judgment. In the opinion this court cited authorities
to the effect that, where property is conveyed inter
vivos subject to payments to third persons, it consti-
tutes an implied or constructive trust, as between the
trustee and the cestuis que trust, and may be enforced
by them directly by a suit brought in their own names
and right. This is the same procedure as we find in
the case at bar.

The defendants insist that the proof does not support

the decree in the case at bar, and cite our recent holding reading: "So reluctant are the courts to engraft a trust by parol on the legal title to real estate, that there is perhaps no better established doctrine than the one which requires a high degree of proof in order to establish the trust by parol evidence." Holbein v. Holbein, 149 Neb. 281, 30 N. W. 2d 899. This can be supported by Annotation, 23 A. L. R. 1502; Roddy v. Roddy, 3 Neb. 96; 1 Perry on Trusts, § 137, p. 219.

In our opinion the plaintiffs did establish a constructive trust by the degree of proof required in such cases.

It is true that the defendant testified positively that he made many payments on the $3,000 note, and that his mother waived all interest on his note, but two checks that he introduced were for $240 each, which would exactly cover the interest due his mother for a two-year period each, and another check, defendants' exhibit W, for $400, dated December 16, 1930, bore unmistakable evidence of some word being erased and the word "note" written over it, so the exhibit now reads, "Part payment on note."

We have examined all of the other assignments of error set out by the defendants and find them without merit. Without setting out and comparing many other items in the evidence in which the defendants' testimony is in sharp and direct conflict with that of other witnesses, we have reached the conclusion that the case at bar is clearly one depending on the facts proved, as shown in the bill of exceptions, and an examination of this evidence of all these witnesses and the exhibits convinces this court that the decree of the trial court was right and should be affirmed.

AFFIRMED.