CHARLES P. BRATT, APPELLEE, v. JOSEPH S. WISHART, ADMINISTRATOR, ET AL., APPELLANTS.

287 N. W. 769

FILED OCTOBER 6, 1939. No. 30691.

*Herbert W. Baird* and *William M. Holt,* for appellants.

*Perry, Van Pelt & Marti* and *John H. Comstock, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

Defendants appeal from a decree in which an equitable lien was impressed upon certain real estate and a sale was ordered if a judgment in favor of the plaintiff for $8,565.71, with 6 per cent. interest from January 20, 1939, was not paid within 30 days.

This is the second appearance of this litigation in this court. In November, 1934, an opinion was released, written by Chief Justice Goss, 127 Neb. 836, 257 N. W. 258, in which a refusal on the part of the district court to declare a trust against this same farm property was reversed and a new trial ordered. Many of the facts involved will be found set out in such former opinion.

The evidence discloses that for many years John P. Bratt had owned 240 acres of unimproved land lying about one mile west of Bennet in Lancaster county. The plaintiff, who was a nephew of John P. Bratt, was born near Bennet over 50 years ago, and lived with his uncle in Lincoln while attending the Lincoln high school, from which he graduated. The plaintiff then worked for many years in the Citizens Bank of Bennet, of which his uncle was vice-president and principal stockholder. While an employee in this bank, an oral agreement was made at the Bratt home in Lincoln in August, 1919, by which the plaintiff was to build a good set of improvements upon this 240 acres and move onto the place and try farming, and if he was successful in this it was agreed that a written contract should be drawn between them, in which the plaintiff could buy the land from his uncle for $175 an acre, and it was agreed that, if the plaintiff did not make a "go" of it, he would not lose anything from having erected these improvements, in which he spent over $10,000. This conversation was had in the

presence of the plaintiff, his wife, and John P. Bratt, and his wife, Elizabeth Bratt, was present during part of the conversation.

The plaintiff and his family lived on this farm from about March 1, 1920, until the summer of 1922, when John P. Bratt desired him to go to Albion and take charge of the telephone line owned there by John P. Bratt and "Hal" Bratt, another uncle; and John P. Bratt stated that he thought the plaintiff would be better off if he gave up farming and went into the telephone business, and that he needed him at Albion and wanted him to go, which he did, and later worked for them at Newman Grove on another telephone line.

John P. Bratt died intestate on April 25, 1930, leaving as his heirs his widow, now deceased, and his daughter, Lourene Bratt Wishart. In his safety deposit box was found a small slip of paper, which was proved to be in his handwriting, which was marked exhibit No. 5, and reads as follows:

"The 240 acres in sec 9-8-8 should never be sold for less than $150 per acre plus $5,000 or 6,000 for the improvements, and should bring $200 or more per acre before many years.

"When this land is sold I want it sold plus the improvements and the amt the improvements bring to be paid to Charles P Bratt who built them.

"May 8 - 26.                          John P Bratt
                                              "1501 C St."

John P. Bratt raised the price of this farm $50 an acre to a real estate agent, saying that he must get the value of improvements out of it for the plaintiff. He refused at one time to lease it for longer than a year, because he was trying to sell it so the plaintiff could get his money out of the improvements, and on several other occasions, to men with whom he had dealings, he stated that the plaintiff should have the value of the improvements when the property was sold.

The plaintiff filed a claim on January 21, 1931, against

the estate of his uncle for the value of these improvements, and this claim was rejected by the county court, perhaps because John P. Bratt had never promised the plaintiff that he would repay him the cost of the improvements in cash, but always agreed to settle for them on a fair basis out of the proceeds when the farm was sold.

After the adverse ruling on the claim had been appealed to the district court, the plaintiff began this independent action in equity on January 19, 1932, to have a trust declared in the farm and a lien placed thereon for the value of his improvements. This equity case was tried in the district court, and defendants prevailed, and upon appeal it was reversed in the opinion written by Chief Justice Goss. It was tried in the district court a second time, and the trial judge resigned before deciding it, and the appeal now before us is from the third trial of the equity case in the district court.

On February 20, 1932, defendant filed a motion to require plaintiff to elect whether he would proceed with his petition in equity for a lien on the land, or whether he would prosecute his appeal pending in the district court from the order of the county court rejecting his claim against the estate. This motion was sustained. Thereupon, plaintiff filed an election to proceed with the action in equity, and after trial a decree was entered in the district court for the defendants on May 19, 1933, and on December 29, 1933, the appeal from the ruling of the county court was dismissed for want of prosecution.

The defendants contend that the judgment of the county court rejecting the claim against the estate was supported by the same evidence that had been produced in the equity case, and that section 30-609, Comp. St. 1929, provides that every person is forever barred from recovering on such claim or demand, and that all questions were disposed of when the county court rejected the claim against the estate; that such ruling was *res judicata,* and the question is forever settled, and cite a large number of authorities in support of their contention; that county courts are courts of

general jurisdiction, and their settlement of all matters relating to the distribution of estates, made upon due and proper notice, is final and cannot be attacked, citing *In re Heirship of Robinson*, 119 Neb. 285, 228 N. W. 852.

In our opinion, the county court, in dismissing plaintiff's claim for a money judgment, did not in any way adjudicate the plaintiff's right to proceed in the district court for an equitable lien; in fact, that would have been beyond the power of the county court, for section 16, art. V of the Constitution of Nebraska, provides that the county court shall not have jurisdiction in civil matters in which the title to real estate is in question.

In *Klug v. Seegabarth*, 98 Neb. 272, 152 N. W. 385, it is held that the district court has original jurisdiction of an action to declare a lien upon real estate in the hands of a residuary legatee. See *Burton v. Defenbaugh*, 132 Neb. 851, 273 N. W. 489; *Abbott v. Wagner*, 108 Neb. 359, 188 N. W. 113; *State v. Bank of Commerce*, 61 Neb. 22, 84 N. W. 406.

It has been held by this court that "A futile attempt to assert a nonexistent remedy does not, under the doctrine of election of remedies, preclude a resort to a legal remedy or operate as an estoppel to assert it." *Live Stock Nat. Bank v. Marshall*, 131 Neb. 185, 267 N. W. 414. See *Henley v. Live Stock Nat. Bank*, 127 Neb. 857, 257 N. W. 244; 18 Am. Jur. 146, sec. 24.

No Nebraska case directly in point having been cited to the contrary, it is our holding that the dismissal of the appeal from the rejection of the claim filed in the county court did not bar the action in equity in the district court.

While it thus appears that the plaintiff attempted to avail himself of a claim against the estate in the county court to which he was not entitled, the defendants, while forcing the plaintiff to elect which of two remedies he would pursue, did not, in their pleadings filed immediately thereafter, or for several years thereafter, make any claim that such conclusive election constituted a defense. It has generally been held that such an election of remedies, being

an affirmative defense, must be seasonably pleaded to be available. 18 Am. Jur. 168, secs. 52, 53.

In the election of remedies, "A mere manifestation of intention to pursue one remedy rather than the other is not an irrevocable election; but it becomes such as soon as the other party has materially changed his position in reasonable reliance thereon. The bringing of a suit for one remedy is a manifestation of choice of that remedy; but it does not preclude the plaintiff from seeking the other remedy instead, if he has a reasonable ground for so doing, so long as the defendant has not so altered his position as to make it unjust to permit the change." Restatement, Contracts, 712, sec. 381. See 15 Neb. Law Bulletin, 255.

The court feels that it should be stated that there have been changes in the attorneys engaged on both sides of this litigation since it was brought to this court the first time.

The defense of the statute of limitations has been continually pressed by defendants, and such a claim was considered in our former opinion. If this court had believed that question disposed of the case, the opinion entered on its first appearance before us would not have said that the evidence wrongly rejected at the first trial "should be considered in order to give fair recompense to plaintiff for his expenditures upon the land."

It is clear from the statement Colonel Bratt placed with his valuable papers in his safety box that he considered that the plaintiff had a trust in the land for the fair value of the improvements. He allowed the plaintiff to keep up the insurance thereon in his own name; then, very shortly before the death of Colonel Bratt, such insurance was canceled, and written in the name of Colonel Bratt.

The trial court made the following finding: "The court further finds that in April, 1930, said John P. Bratt converted the improvements to his own use and repudiated the aforesaid trust; that ever since said date said John P. Bratt and his successors, the defendants herein, have been in possession of said improvements, have moved them, altered them and exercised complete dominion over them and

have enjoyed the benefits therefrom, to the exclusion of plaintiff; that plaintiff did not discover said repudiation until on or about January 8, 1931."

In our opinion, this finding is entirely supported by the evidence, and we see no merit in the contention that this action is barred by the statute of limitations.

In the brief of 240 pages filed on behalf of the defendants, 41 propositions of law are set out, and nearly all of them are argued to a greater or lesser extent. However, we cannot extend this opinion by undertaking a discussion of each of the questions argued at length in the excellent briefs submitted.

There is no question but that the plaintiff erected the buildings on this farm to which he testified, and that he paid out, according to his exhibit No. 3, p. 590, the sum of $10, 541.19 in their construction, and these improvements are still on the premises, but every one knows that improvements erected more than 15 years ago have depreciated in value year after year.

Joseph S. Wishart married the heir to this land, and was the administrator of the estates of both her father and mother. He testified at length as to the very extensive repairs necessary to these buildings: The foundations were defective, roofs worn out, the buildings had to be painted, etc. He states that the house was too large for such a farm, and thereby limited the purchasers to those who desire such extensive improvements. Mr. Wishart is rather pessimistic when it comes to the value of the improvements placed thereon by the plaintiff, and testifies that, when these buildings were practically new at the time plaintiff moved from the farm to Albion at the request of Colonel Bratt, all of these improvements had not added more than $4,500 to the value of the farm; that by the year 1926 the improvements were worth perhaps $3,500, and by 1930 these improvements, for which the plaintiff paid over $10,000, were worth only $2,500.

Several witnesses testified to the value of these improvements. George Christian, who has lived in Lincoln 27 years

and been in the real estate business all of that time, handling improved and unimproved city and farm property, placed the value of the improvements as $8,400 in 1930 when they were taken over by the defendants. It was brought out in the evidence that the average of the estimate of five witnesses placed the value of the improvements in 1922 at about $6,000. Considerable evidence was also taken as to the rental value of the improvements, and a fair rental value of the improvements from 1922 to 1930 would be $240 a year, and to the fair value of the improvements as of the date 1930 the trial court doubtless added something for rent, and then interest at 6 per cent. since that time. These improvements, as repaired, are still on the premises; they were erected at the sole cost of the plaintiff. In 1930 Colonel Bratt converted these improvements to his own use, and since that time he and his successors have exercised complete dominion over them.

The defendants in their brief say: "Colonel Bratt in his memorandum assumed more obligation than law or equity could have charged him with. His successors have honored that obligation, reverently, regardless of any mere legal liability. They offered the plaintiff leave to remove the buildings, offered to deed the plaintiff the land upon which the buildings stood, tendered the 'improved' lands in exchange for unimproved lands in Charles' control and made a fair cash offer for what value the buildings actually added to the value of the lands subsequent to 1930."

However, these relatives have failed in all attempts to settle the questions involved, and have had three sharply contested trials in the district court, and the matter has been in litigation for some seven years, and should be settled. There is much more that might be said on both sides, but the court has reached the conclusion that there is evidence to support the judgment rendered in the trial court of $8,565.71, and, seeing no prejudicial error in the record submitted, the decree and judgment of the trial court are hereby

AFFIRMED.

SIMMONS, C. J., concurs in the result.