Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/28/2019 09:07 AM CDT

Claudia Vasquez and Cesar Moreno Tinoco,
appellants, v. CHI Properties,
LLC, appellee.

___ N.W.2d ___

Filed April 5, 2019.    No. S-17-1287.

1. **Motions to Dismiss: Appeal and Error.** An appellate court reviews a district court's order granting a motion to dismiss de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.

2. **Actions: Pleadings: Notice.** Civil actions are controlled by a liberal pleading regime; a party is only required to set forth a short and plain statement of the claim showing that the pleader is entitled to relief and is not required to plead legal theories or cite appropriate statutes so long as the pleading gives fair notice of the claims asserted.

3. **Motions to Dismiss: Pleadings.** To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face.

4. **Rules of the Supreme Court: Pleadings.** Dismissal under Neb. Ct. R. Pldg. § 6-1112(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.

5. **Statutes: Legislature: Intent.** In construing statutes, legislative intention is to be determined from a general consideration of a whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and intent so deduced from the whole will prevail over that of a particular part considered separately.

6. **Actions: Landlord and Tenant: Leases: Words and Phrases.** A tenant who accepts possession and lives on the property for several months thereafter does not have a claim under Neb. Rev. Stat. § 76-1418 (Reissue 2018), because the duties described in § 76-1418 pertain to the "commencement" of the lease term.

7. **Election of Remedies: Estoppel: Claim Preclusion.** The doctrine of election of remedies is a somewhat vague notion lying somewhere between the areas occupied by the doctrines of equitable estoppel and claim preclusion.

8. **Election of Remedies: Proof.** When the election is between remedies with different elements of proof under the same complaint, a plaintiff can attempt to prove both theories and need only elect one for the purpose of recovery in the event that the trier of fact finds both theories were proved.

9. **Election of Remedies: Pleadings.** So long as the plaintiff does not ultimately obtain two recoveries for the same harm, the doctrine of election of remedies does not generally prevent the plaintiff from pleading remedies that are mutually exclusive.

10. **Election of Remedies.** Election of remedies applies only when there are inconsistent remedies for redress of the same single injury.

11. **Landlord and Tenant: Contracts: Notice: Injunction: Damages: Time.** So long as a tenant has given notice when required by Neb. Rev. Stat. § 76-1419 (Reissue 2018), a tenant can seek damages or injunctive relief under Neb. Rev. Stat. § 76-1425(2) (Reissue 2018) without sending notice under § 76-1425(1) specifying that the rental agreement will terminate upon a date not less than 30 days after receipt of the notice of the breach, if not remedied within 14 days.

12. **Landlord and Tenant: Election of Remedies: Injunction: Damages: Words and Phrases.** The reference in the conjunctive to "damages" and "injunctive relief" in Neb. Rev. Stat. § 76-1425(2) (Reissue 2018) serves to vest a tenant with two distinct options for relief and does not require that both be pursued in order to pursue either.

13. **Actions: Landlord and Tenant: Contracts.** Neither Neb. Rev. Stat. §§ 76-1430 and 76-1439 (Reissue 2018) nor any other provision of the Uniform Residential Landlord and Tenant Act, Neb. Rev. Stat. §§ 76-1402 to 76-1449 (Reissue 2018), indicates that a separate action for termination of a rental agreement is a prerequisite to termination under the act.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Affirmed in part, and in part reversed.

Katelyn Cherney, of Milton R. Abrahams Legal Clinic, for appellants.

Mark S. Dickhute for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

### NATURE OF CASE

Tenants brought a complaint against their landlord under the Uniform Residential Landlord and Tenant Act (URLTA), Neb. Rev. Stat. §§ 76-1402 to 76-1449 (Reissue 2018). They alleged that numerous code violations materially affecting their health and safety were present at the time they commenced physical possession of the property, but were not discovered until later. The tenants asked the City of Omaha Planning Department's housing division (Housing Division) to conduct an inspection of the property, which eventually led to the Housing Division's declaring the property unsafe and unfit for human occupancy and ordering the tenants to immediately vacate the premises. The landlord failed to perform repairs to make the property habitable even after months of repeated notices and demands by the Housing Division and the tenants. During much of this time, the tenants continued to pay utilities. The tenants eventually gave their landlord 5 days' notice of their intention to terminate the rental agreement. The landlord refused to return the tenants' security deposit or reimburse them for utilities paid. The landlord also refused to return rent paid for the 2 months that the tenants were mostly unable to occupy the premises, which the landlord allegedly had demanded in retaliation for the tenants' reporting to the Housing Division. The district court dismissed the complaint under Neb. Ct. R. Pldg. § 6-1112(b)(6), and the tenants appeal. The question presented is whether the alleged facts state a claim for relief under the URLTA.

### BACKGROUND

#### COMPLAINT

Claudia Vasquez and Cesar Moreno Tinoco (tenants) filed a complaint against CHI Properties, LLC (CHI). After their first

complaint was dismissed, they were granted leave to amend. The amended complaint alleged the following.

On or about May 10, 2016, tenants entered into a written agreement to rent property owned by CHI for $850 per month and to pay $850 as a security deposit. During the first 8 weeks of the lease term, after tenants began living at the property, they noticed a water leak in the bathroom that was causing mold formation. CHI sent a plumber to repair the leak, but the repair was not effective.

CHI failed to adequately respond to tenants' concerns regarding surface mold in the home. In July 2016, tenants' minor child was treated for mold exposure and the Douglas County Health Department was contacted.

By letter dated October 4, 2016, the health department issued written recommendations to CHI for resolving an active water leak and visible mold. As of November 18, CHI made no efforts to follow the recommendations or otherwise resolve the water leak and mold.

Tenants contacted the Housing Division, requesting a housing inspection for possible housing code violations. The Housing Division inspected the property on October 7, 2016, and issued a "'Notice of Property Violation'" to CHI by mail on October 14.

When CHI received the violation notice on or around October 17, 2016, CHI demanded, in retaliation for tenants' complaint to the Housing Division, that tenants vacate the property within 2 weeks.

Around that same time, CHI accepted a payment by tenants in the amount of $850 for November's rent. Tenants had made all prior rent payments since the inception of the rental agreement.

On or around November 14, 2016, the Housing Division found that CHI had not cured the previously cited violations, and additional violations were discovered. There were 31 code violations in total, 13 of which were considered to be of a "'high' severity level."

On or around November 17, 2016, a major electrical hazard at the property was detected by the Housing Division and the Omaha Public Power District. This major electrical hazard put tenants at risk of serious harm. This hazard existed at the commencement of the rental agreement, although tenants were unaware of it at that time.

The Housing Division declared the property unsafe and unfit for human occupancy and ordered tenants to immediately vacate the property. A placard "'Danger-Closed,'" along with a description of the penalties for occupancy, was posted on the property by the Housing Division on November 18, 2016.

That same day, CHI spoke with tenants and assured them that repairs would be completed within a few days. Tenants stayed with family members. There is no allegation that they paid rent to their family members.

On or around December 16, 2016, tenants sent written notice to CHI demanding performance of the rental agreement. The details of this notice are not otherwise described in the complaint. Tenants remained barred from the property by the Housing Division.

On or around December 19, 2016, the Housing Division again inspected the property. It found that CHI was working on the electrical issue, but it was not completed, and that CHI had not remedied any of the other 30 code violations.

During an inspection on December 28, 2016, the Housing Division found that the "'water is off and the water heater is being re-installed.'" The Housing Division notified CHI and tenants that no one could occupy the premises until the water heater was properly installed.

At some point, despite the Housing Division's no-occupancy order, CHI threatened that if tenants did not resume occupancy, it would treat them as if they had abandoned the property and dispose of their personal belongings.

On January 9, 2017, tenants mailed a second written notice to CHI, demanding that it complete all repairs and inspections necessary so that they could resume occupancy.

The Housing Division removed the placard from the property on February 3, 2017, and tenants moved back in on February 5. However, tenants immediately discovered that the water was off and major plumbing repairs were in progress. Tenants had not paid rent for December 2016 or January 2017, but they had paid for television and internet services until approximately January 10 and had paid all utility bills until March 14.

On February 6, 2017, CHI demanded and tenants paid $850 for the February rent. Through a notice posted on February 2, CHI had threatened to bring a restitution action if tenants failed to pay February's rent.

The following day, on February 7, 2017, the Housing Division issued a new order to vacate and the property was replacarded. The Housing Division ordered CHI to hire a licensed plumber to correct noncompliant plumbing work and complete necessary plumbing inspections within 30 days. CHI failed to comply. CHI did not refund tenants their February rent payment.

Tenants "terminated their lease effective March 12, 2017, and demanded return of all prepaid rent and security after tendering five days' written notice under Neb. Rev. Stat. § 76-1426(1) for [CHI's] failure to deliver possession of fit and habitable premises." Tenants had been excluded from the property for nearly 4 months due to CHI's refusal to complete repairs and inspections necessary to have the property released for occupancy by the Housing Division.

CHI failed to return tenants' "prepaid rent" and security deposit following written demand. The property remained under an active vacate order as of May 1, 2017, the date tenants filed their amended complaint.

Tenants' amended complaint alleged causes of action under the URLTA. They cited to §§ 76-1426, 76-1419, 76-1430, and 76-1439, which corresponded to actions for (1) failure to deliver possession, (2) failure to maintain fit premises, (3) unlawful ouster, and (4) retaliation. Tenants sought return of their security deposit, which is provided for by § 76-1416(2),

as well as other provisions of the URLTA, damages, and attorney fees.

## Motion to Dismiss

CHI moved to dismiss the complaint under § 6-1112(b)(6) for failure to state a claim.

CHI asserted, first, that there was no allegation that possession had not been delivered. Thus, according to CHI, there was no breach of the duty set forth in § 76-1418 and the remedies of § 76-1426 do not apply, including the 5-day notice to terminate.

Second, CHI asserted that because there was no allegation that tenants had delivered a "14/30 day Notice to Cure," tenants could not make any claim for damages under § 76-1425. Nor, according to CHI, did tenants assert any facts showing damages, "because they procured substitute services and deducted them from the rent, as provided in Neb. Rev. Stat. §76-1427 (1)" or "secured substitute housing and abated the payment of rent, the remedy allowed to them under Neb. Rev. Stat. §76-1427(2)." CHI asserted that tenants' allegations that they resorted to the remedy of abatement precluded them, pursuant to § 76-1427(2), from pursuing damages or attorney fees.

CHI asserted that tenants failed to state claims under § 76-1430 or § 76-1439 for retaliation or ouster, because there was no allegation that tenants had either recovered possession or lawfully terminated the rental agreement.

At the hearing on the motion to dismiss, CHI submitted, without objection, a printout from Nebraska's online trial court case management system, known as JUSTICE, for the court to take judicial notice of, which demonstrated that tenants did not file a separate action to terminate the lease.

## Order of Dismissal

The district court concluded that tenants failed to state a claim for breach of the duty to deliver, because §§ 76-1418 and 76-1426 did not apply when tenants accepted

physical possession of the property at the commencement of the rental period.

Regarding the alleged failure to maintain fit and habitable premises, the court stated that tenants' failure to allege that they had delivered to CHI a "14/30 day Notice to Cure or terminate the lease" prevented their claim. The court also cited to the exhibit demonstrating that tenants did not bring a separate action to terminate the lease. The court reasoned, further, that damages under § 76-1425 were not available for any breach of a duty to maintain fit premises, because damages are available under the statute only "when an action for injunctive relief has also been brought." Finally, the court reasoned that because tenants resorted to the remedy of abatement pursuant to § 76-1427(2), they were precluded from recovering damages and attorney fees under § 76-1425(2).

The court concluded that tenants failed to state claims for ouster or retaliation under §§ 76-1430 and 76-1439(2), because there was no allegation that tenants either recovered possession or lawfully terminated the rental agreement.

The court granted CHI's motion to dismiss. Tenants elected to stand on the amended complaint and sought entry of a final judgment. The court dismissed the complaint "with / without prejudice," and tenants timely appealed.

## ASSIGNMENT OF ERROR

Tenants assign, summarized, that the district court erred in dismissing their complaint.

## STANDARD OF REVIEW

[1] An appellate court reviews a district court's order granting a motion to dismiss de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.[1]

---

[1] *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018); *Burklund v. Fuehrer*, 299 Neb. 949, 911 N.W.2d 843 (2018).

## ANALYSIS

[2] Nebraska is a notice pleading jurisdiction.[2] Civil actions are controlled by a liberal pleading regime; a party is only required to set forth a short and plain statement of the claim showing that the pleader is entitled to relief and is not required to plead legal theories or cite appropriate statutes so long as the pleading gives fair notice of the claims asserted.[3] The rationale for this liberal notice pleading standard in civil actions is that when a party has a valid claim, he or she should recover on it regardless of a failure to perceive the true basis of the claim at the pleading stage.

[3,4] Thus, to prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face.[4] Dismissal under § 6-1112(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.[5] We review the district court's determination as to whether the plaintiff has stated a claim de novo, accepting as true all facts that are well pled and the proper and reasonable inferences of law and fact that may be drawn therefrom, but not the plaintiff's conclusions.[6]

[5] Tenants attempted to enforce at least four different rights and obligations set forth by at least four different statutes of the URLTA. However, according to CHI, none of the provisions of the URLTA allow tenants to recover under the facts pled or the proper and reasonable inferences of law and fact that may be drawn therefrom. In order to determine whether tenants stated a claim under the URLTA, we must determine the meaning of

---

[2] *Id.*

[3] *Id.*

[4] See *id.*

[5] *In re Interest of Noah B. et al.*, 295 Neb. 764, 891 N.W.2d 109 (2017).

[6] See, *Eadie v. Leise Properties, supra* note 1; *Burklund v. Fuehrer, supra* note 1.

the URLTA statutes independently of the trial court.[7] In construing statutes, legislative intention is to be determined from a general consideration of a whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and intent so deduced from the whole will prevail over that of a particular part considered separately.[8] The statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[9]

The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[10] In accordance with the mandate of § 76-1402, we must liberally construe and apply the URLTA to promote its underlying purposes and policies to (1) simplify and modernize the law, (2) encourage both the landlord and tenant to maintain and improve the quality of housing, and (3) make uniform the law among those states that enact it.

While we agree with the district court that tenants failed to state a claim for breach of the duty to deliver possession under § 76-1418, we hold that tenants stated plausible claims for breaches of the duties to put and keep the rental premises fit and habitable under § 76-1419, for wrongful ouster under § 76-1430, and retaliatory conduct as described by § 76-1439. These correspond to what tenants labeled as their second, third, and fourth causes of action. We also hold that the alleged facts do not present an insuperable bar to relief in the form of return of their security deposit under § 76-1416(2) "[u]pon termination of the tenancy . . ." through means not specifically described by the URLTA. Which precise remedies will be available to tenants under the URLTA in the event they prove

---

[7] See *Pan v. IOC Realty Specialist*, 301 Neb. 256, 918 N.W.2d 273 (2018).

[8] *Id.*

[9] *Id.*

[10] *Id.*

the alleged breaches of the duties set forth by the URLTA was not the proper subject of a motion to dismiss, so long as some remedy was available under the statutory scheme. We find no merit to CHI's assertion that tenants lack any remedy under the URLTA for the breaches alleged.

DUTY TO DELIVER POSSESSION

We first address the duty under § 76-1418 to deliver possession and its corresponding remedy set forth in § 76-1426. We agree with CHI and the district court that these provisions of the URLTA do not apply to the facts alleged. The district court thus did not err in dismissing tenants' first cause of action.

Section 76-1418 sets forth a duty of the landlord to deliver possession at commencement of the rental term:

At the commencement of the term the landlord shall deliver possession of the premises to the tenant in compliance with the rental agreement and section 76-1419. The landlord may bring an action for possession against any person wrongfully in possession and may recover the damages provided in subsection (3) of section 76-1437. If the landlord makes reasonable efforts to obtain possession of the premises, he shall not be liable for an action under this section.

Section 76-1426 describes remedies for a landlord's failure to deliver possession:

If the landlord fails to deliver possession of the dwelling unit to the tenant as provided in section 76-1418, rent abates until possession is delivered and the tenant shall:

(1) Upon at least five days' written notice to the landlord terminate the rental agreement and upon termination the landlord shall return all prepaid rent and security; or

(2) Demand performance of the rental agreement by the landlord and, if the tenant elects, maintain an action for possession of the dwelling unit against any person wrongfully in possession or wrongfully withholding possession and recover the damages sustained by him.

If a person's failure to deliver possession is willful and not in good faith, an aggrieved person may recover from that person an amount not more than three months' periodic rent or threefold the actual damages sustained by him, whichever is greater, and reasonable attorney's fees.

Tenants argue that the duty to deliver possession under § 76-1426 is a duty to deliver possession to premises that are fit and habitable. They point out that § 76-1426 refers to "possession of the dwelling . . . as provided in section 76-1418" and that § 76-1418 describes "possession of the premises . . . in compliance with . . . section 76-1419," which describes the landlord's duty to put and keep the premises in a fit and habitable condition. They argue that the allegations stated a claim that CHI breached its obligations under § 76-1418 to deliver fit and habitable premises.

CHI does not deny that the URLTA requires landlords to deliver possession of habitable property, but argues that § 76-1426 pertains only to the commencement of the lease without possession and not to some later moment in time after tenants have accepted possession. After commencement and acceptance of possession, CHI asserts that tenants' rights related to lack of habitability are governed by §§ 76-1419, 76-1425, and 76-1427.

[6] We agree with CHI. A tenant who accepts possession and lives on the property for several months thereafter does not have a claim under § 76-1418, because the duties described in § 76-1418 pertain to the "commencement" of the lease term. In contrast, the duties set forth in § 76-1419 to comply with minimum housing codes materially affecting health and safety and to "put and keep" the premises in a fit and habitable condition are not limited under the plain language to conditions arising after commencement of the lease term.

For obvious public policy reasons, the URLTA discourages occupancy of premises that are not fit and habitable. Accordingly, the modifiers "in compliance with . . . . section

76-1419" or "as provided in section 76-1418" of "possession" are not contained in either the abatement provisions or the treble damages provisions of § 76-1426. Instead, § 76-1426 describes that "rent abates until possession is delivered" and nowhere provides the remedy of rent abatement after possession is delivered.

Reading §§ 76-1418 and 76-1426 together and in pari materia with other sections of the URLTA, we conclude that when a landlord attempts to deliver uninhabitable premises, § 76-1426 provides that the tenant may refuse possession and that rent abates until possession in compliance with both the rental agreement and § 76-1419 is delivered. The tenant who has thus refused possession may either terminate the rental agreement with 5 days' notice or demand performance. But a tenant who accepts possession and lives in uninhabitable premises does not have a claim under § 76-1418 and instead must proceed under other provisions of the URLTA.

In this case, tenants alleged that possession of the rental property was delivered and that they lived there for approximately 6 months. Under the facts alleged, the remedies provided in §§ 76-1418 and 76-1426 do not apply. Habitability issues occurring or discovered during occupancy are addressed by §§ 76-1419, 76-1425, and 76-1427. We turn next to these statutes.

### Duty to Maintain Fit and Habitable Premises

Section 76-1419 describes the duties of a landlord to keep the rental premises fit and habitable. It states in relevant part:

(1) The landlord shall:

(a) Substantially comply, after written or actual notice, with the requirements of the applicable minimum housing codes materially affecting health and safety;

(b) Make all repairs and do whatever is necessary, after written or actual notice, to put and keep the premises in a fit and habitable condition;

. . . .

(d) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances, including elevators, supplied or required to be supplied by him or her;

. . . .

(f) Supply running water and reasonable amounts of hot water at all times . . . .

If there exists a minimum housing code applicable to the premises, the landlord's maximum duty under this section shall be determined by subdivision (1)(a) of this section. The obligations imposed by this section are not intended to change existing tort law in the state.

The facts alleged in tenants' complaint demonstrate breaches of CHI's duties under § 76-1419. While § 76-1419(1)(a) and (b) require "written or actual notice" in order to establish the duty under those subsections, tenants alleged both written and actual notice of numerous housing code violations "materially affecting health and safety"[11] and which CHI failed to repair so as to "put and keep the premises in a fit and habitable condition."[12] Furthermore, tenants alleged that CHI failed to maintain plumbing and electrical "in good and safe working order and condition," as required by § 76-1419(d), or supply "running water and reasonable amounts of hot water," as required by § 76-1419(f). Those provisions do not set forth notice as a precondition to those duties.

CHI does not dispute that tenants sufficiently alleged that it breached its duties under § 76-1419, but argues that tenants have no remedy for the alleged breaches. CHI elaborates that tenants elected their statutory remedy under § 76-1427 and that they received such remedy in full when they chose to not pay rent in December 2016 and January 2017 while they lived with

---

[11] § 76-1419(1)(a).

[12] § 76-1419(1)(b).

relatives. CHI also argues that tenants failed to allege necessary statutory predicates to the remedies set forth in § 76-1425. We find no merit to these arguments.

Section 76-1405 provides:

(1) The remedies provided by the [URLTA] shall be so administered that the aggrieved party may recover appropriate damages. The aggrieved party has a duty to mitigate damages.

(2) Any right or obligation declared by the [URLTA] is enforceable by action unless the provision declaring it specifies a different and limited effect.

Section 76-1425 provides remedies for material noncompliance by the landlord either with the rental agreement or with § 76-1419 materially affecting health and safety. Section 76-1425 states:

(1) Except as provided in the [URLTA], if there is a material noncompliance by the landlord with the rental agreement or a noncompliance with section 76-1419 materially affecting health and safety, the tenant may deliver a written notice to the landlord specifying the acts and omissions constituting the breach and that the rental agreement will terminate upon a date not less than thirty days after receipt of the notice if the breach is not remedied in fourteen days, and the rental agreement shall terminate as provided in the notice subject to the following. If the breach is remediable by repairs or the payment of damages or otherwise and the landlord adequately remedies the breach prior to the date specified in the notice, the rental agreement will not terminate. If substantially the same act or omission which constituted a prior noncompliance of which notice was given recurs within six months, the tenant may terminate the rental agreement upon at least fourteen days' written notice specifying the breach and the date of termination of the rental agreement. The tenant may not terminate for a condition caused by the deliberate or negligent act or omission of

the tenant, a member of his or her family, or other person on the premises with his or her consent.

(2) Except as provided in the [URLTA], the tenant may recover damages and obtain injunctive relief for any noncompliance by the landlord with the rental agreement or section 76-1419. If the landlord's noncompliance is willful the tenant may recover reasonable attorney's fees. If the landlord's noncompliance is caused by conditions or circumstances beyond his or her control, the tenant may not recover consequential damages, but retains remedies provided in section 76-1427.

(3) The remedy provided in subsection (2) of this section is in addition to any right of the tenant arising under subsection (1) of this section.

(4) If the rental agreement is terminated, the landlord shall return all prepaid rent and security recoverable by the tenant under section 76-1416.

However, if the material noncompliance with § 76-1419 involves the deliberate or negligent failure to supply running water, hot water, heat, or essential services, then, alternatively to the remedies set forth in § 76-1425, the tenant may proceed under § 76-1427. Section 76-1427 states in full:

(1) If contrary to the rental agreement or section 76-1419 the landlord deliberately or negligently fails to supply running water, hot water, or heat, or essential services, the tenant may give written notice to the landlord specifying the breach and may:

(a) Procure reasonable amounts of hot water, running water, heat and essential services during the period of the landlord's noncompliance and deduct their actual and reasonable cost from the rent;

(b) Recover damages based upon the diminution in the fair rental value of the dwelling unit; or

(c) Procure reasonable substitute housing during the period of the landlord's noncompliance, in which case the tenant is excused from paying rent for the period of the landlord's noncompliance.

In addition to the remedy provided in subdivisions (a) and (c), if the failure to supply is deliberate, the tenant may recover the actual and reasonable cost or fair and reasonable value of the substitute housing not in excess of an amount equal to the periodic rent, and in any case under this subsection reasonable attorney's fees.

(2) If the tenant proceeds under this section, he may not proceed under section 76-1425 as to that breach.

(3) The rights under this section do not arise until the tenant has given written notice to the landlord or if the condition was caused by the deliberate or negligent act or omission of the tenant, a member of his family, or other person on the premises with his consent. This section is not intended to cover circumstances beyond the landlord's control.

CHI is correct that the list of possible remedies in § 76-1427(1)(a), (b), and (c) are listed in the alternative and that § 76-1427(2) provides that a tenant who proceeds under § 76-1427 "may not proceed under section 76-1425 as to that breach." But to the extent CHI's motion to dismiss sufficiently asserted the affirmative defense of election of remedies,[13] we conclude that the doctrine does not support the dismissal of tenants' complaint.

[7] Election of remedies is an ancient doctrine created by the courts.[14] The doctrine of election of remedies is a somewhat vague notion lying somewhere between the areas occupied by the doctrines of equitable estoppel and claim preclusion.[15] It is largely a rule of policy to prevent vexatious litigation.[16] It requires a plaintiff to choose between inconsistent remedies for

---

[13] See *deNourie & Yost Homes v. Frost*, 295 Neb. 912, 893 N.W.2d 669 (2017).

[14] *Porter v. Smith*, 240 Neb. 928, 486 N.W.2d 846 (1992).

[15] See *Bryant Heating v. United States Nat. Bank*, 216 Neb. 107, 342 N.W.2d 191 (1983).

[16] *Id.*

redress of a single injury.[17] The basic purpose of the doctrine of election of remedies is to prevent a plaintiff from receiving double recovery for a single injury or compensation that exceeds the damages sustained.[18] It is considered a harsh rule which should not be applied in an oppressive manner.[19]

The doctrine of election of remedies normally does not provide grounds for dismissing a complaint under § 6-1112(b)(6) for failure to state a claim. A claim to relief consists of (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, (3) a delict or wrong done by the defendant which consisted in a breach of such primary right and duty, (4) a remedial right in favor of the plaintiff, (5) a remedial duty resting on the defendant springing from this delict, and (6) the remedy or relief itself.[20] To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim for relief that is plausible on its face.[21] In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim.[22] While one of multiple alleged causes of action may be dismissed for failure to state a claim,[23] one of multiple remedies pled for a single

---

[17] *Porter v. Smith, supra* note 14.

[18] See, *Genetti v. Caterpillar, Inc.*, 261 Neb. 98, 621 N.W.2d 529 (2001); *In re 2007 Appropriations of Niobrara River Waters*, 278 Neb. 137, 768 N.W.2d 420 (2009).

[19] *Vowers & Sons*, *Inc. v. Strasheim*, 254 Neb. 506, 576 N.W.2d 817 (1998).

[20] *City of Alliance v. Cover-Jones Motor Co.*, 154 Neb. 900, 50 N.W.2d 349 (1951).

[21] *Peterson v. Kings Gate Partners*, 290 Neb. 658, 861 N.W.2d 444 (2015).

[22] *Id.*

[23] See, e.g., *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 285 Neb. 48, 825 N.W.2d 204 (2013).

breach within the context of a single cause of action is not the proper subject of dismissal under § 6-1112(b)(6) for failure to "state a claim."

[8,9] It is true that at the pleading stage in a lawsuit, a party may be required to elect between two inconsistent theories of recovery, such as when rescission of a contract would preclude damages for breach of the contract.[24] But there was no order in this case requiring tenants to elect a theory of recovery.[25] Moreover, when the election is between remedies with different elements of proof under the same complaint, we have held that a plaintiff can attempt to prove both theories and need only elect one for the purpose of recovery in the event that the trier of fact finds both theories were proved.[26] This is because a futile attempt to assert a nonexistent remedy does not, under the doctrine of election of remedies, preclude a resort to a legal remedy or operate as an estoppel to assert it.[27] So long as the plaintiff does not ultimately obtain two recoveries for the same harm,[28] the doctrine of election of remedies does not generally prevent the plaintiff from pleading remedies that are mutually exclusive.

CHI nevertheless proposes that tenants' act of living rent free with relatives while not paying rent to CHI was an election of the remedy of abatement under § 76-1427, which tenants have already fully realized, and thus they can no longer state any claim for relief. There are several problems with this argument.

---

[24] See *Platte Valley Fed. Sav. & Loan Assn. v. Gray*, 226 Neb. 135, 409 N.W.2d 617 (1987).

[25] See *Southwest Trinity Constr. v. St. Paul Fire & Marine*, 243 Neb. 55, 497 N.W.2d 366 (1993).

[26] See *Genetti v. Caterpillar, Inc., supra* note 18. See, also, 28A C.J.S. *Election of Remedies* § 6 (2008).

[27] *Russo v. Williams*, 160 Neb. 564, 71 N.W.2d 131 (1955).

[28] See Stephen S. Ashley, Bad Faith Actions Liability & Damages § 7:17 (2d ed. 2018), Westlaw (database updated Sept. 2018).

First, pursuing a remedy is an irrevocable election only if pursued to a determinative and advantageous conclusion to the irreparable injury of the other party.[29] Even commencing suit for one remedy has been held not to be a manifestation of the plaintiff's choice of that remedy, "'so long as the defendant has not so altered his position as to make it unjust to permit the change.'"[30] Tenants' act of finding suitable housing from November 18, 2016, until March 12, 2017, when the Housing Division would not allow anyone to occupy the rental property, and not paying rent during that time, was not an irrevocable election of the remedy of abatement under § 76-1427(1)(c).

Nor is it true that under the alleged facts, the remedies provided under § 76-1427 were fully realized. Section 76-1427(1)(c) expressly states that tenants are "excused from paying rent for the period of the landlord's noncompliance." Yet, CHI allegedly demanded that tenants pay rent for November 2016 and February 2017, and tenants alleged that they did so, even though during approximately one-half of November and nearly all of February, they were living in substitute housing. CHI fails to explain how tenants have no right to enforce the provision in § 76-1427(1)(c) that they be excused from paying rent while living in substitute housing and while CHI deliberately or negligently failed to supply running water, hot water, heat, or essential services. CHI also fails to explain why tenants did not sufficiently allege facts showing that they could recover reasonable attorney fees pursuant to § 76-1427(1).

[10] Furthermore, tenants' complaint alleges more than one breach and more than one injury with respect to the duties set forth by § 76-1419. Election of remedies applies only when there are inconsistent remedies for redress of the same single

---

[29] See *Porter v. Smith, supra* note 14. See, also, *Bratt v. Wishart*, 136 Neb. 899, 287 N.W. 769 (1939).

[30] *Bratt v. Wishart, supra* note 29, 136 Neb. at 904, 287 N.W. at 771.

injury.[31] Likewise, § 76-1427(2) states that resort to the remedies of § 76-1427 precludes proceeding under § 76-1425 "*as to that breach.*" (Emphasis supplied.) Before tenants were allegedly forced to vacate the premises because of a major electrical hazard and other code violations, they allegedly lived for approximately 6 months with water leaks and mold. The mold exposure allegedly caused medical complications for tenants' child. The allegations indicate that tenants notified CHI of the problem, as did the Douglas County Health Department. Tenants did not seek alternative suitable housing during that time. Instead, they paid full rent and otherwise did not exercise any of the remedies set forth in § 76-1427.

In fact, as to the water leak and mold, such noncompliance with § 76-1419 was not a failure to supply "running water, hot water, or heat, or essential services," such that § 76-1427(1) could even apply. Therefore, as to CHI's failure to correct the water leak and mold, tenants do not have a choice between §§ 76-1427 and 76-1425, which could lead to an election of remedies. Instead, they are limited to § 76-1425.

And we disagree with the district court's conclusion that the complaint presented an insuperable bar to any relief under § 76-1425. First, tenants' failure to provide CHI with a "14/30 day Notice" of termination does not preclude all relief under § 76-1425.

The underlying conclusion regarding the lack of a 14/30-day notice appears to have been that tenants cannot recover their security deposit pursuant to § 76-1416 if the lease was not terminated under the URLTA. We pause to note that while tenants did not allege facts constituting a 14/30-day notice, "termination of the tenancy" referred to in § 76-1416(2) can occur in many ways other than the process described by § 76-1425. For instance, a tenant who claims a breach of § 76-1419, but cannot show termination through a 14/30-day

---

[31] See, *Porter v. Smith, supra* note 14. See, also, *deNourie & Yost Homes v. Frost, supra* note 13.

notice, can nevertheless recover the security deposit once the term of the lease has expired, so long as the security deposit has not been forfeited.

In any event, there are other remedies provided by § 76-1425 which do not require a 14/30-day notice. Section 76-1425(2) provides that "the tenant may recover damages . . . for any noncompliance by the landlord with the rental agreement or section 76-1419." Further, "If the landlord's noncompliance is willful the tenant may recover reasonable attorney's fees."[32] Under the plain language of the statute, these remedies are "in addition to any right of the tenant arising under subsection (1)."[33] To the extent the district court reasoned that a 14/30-day notice is a prerequisite to damages or attorney fees under § 76-1427(2), it erred. Nothing in subsection (2) indicates that the particular notice described in subsection (1) is a prerequisite for the relief described in subsection (2).

[11] Interpreting § 76-1425(2) as requiring a 14/30-day notice as a prerequisite to damages and attorney fees is not only inconsistent with the plain language of § 76-1425(2), which does not require a 14/30-day notice, but also with § 76-1419, which requires written or actual notice before a landlord has a duty to comply with applicable minimum housing codes materially affecting health and safety or to make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition. It would be a strained reading of the statutory scheme to imply that, in addition to the written or actual notice under § 76-1419, a tenant must give a 14/30-day notice—not just to terminate the lease, but also to have a right to damages and attorney fees under § 76-1425(2). We hold that so long as a tenant has given notice when required by § 76-1419, a tenant can seek damages or injunctive relief under § 76-1425(2) without sending notice under § 76-1425(1)

---

[32] § 76-1425(2).

[33] § 76-1425(3).

specifying that the rental agreement will terminate upon a date not less than 30 days after receipt of the notice of the breach, if not remedied within 14 days.

[12] We also conclude that the district court erred in reading § 76-1425(2) as providing the remedy of damages only if the tenant also seeks injunctive relief. Section 76-1425(2) states in relevant part that "the tenant may recover damages and obtain injunctive relief for any noncompliance." While the district court was correct that "and" is a conjunction and its function is to indicate a connection or addition[34] between "damages" and "injunctive relief," it does not follow that the tenant must choose to pursue both in order to pursue one. Rather, we agree with tenants that the conjunctive "and" in § 76-1425(2) "serves to vest a tenant with two distinct options for relief" and does not require that both be pursued in order to pursue either.[35]

At most, the meaning of § 76-1425(2) in this regard is ambiguous. In construing a statute, an appellate court will, if possible, try to avoid a construction which would lead to absurd, unconscionable, or unjust results.[36] Neither CHI nor the lower court has explained how it would be just to require tenants to obtain injunctive relief in order to recover damages when a landlord breaches the duties set forth in § 76-1419 relating to fitness and habitability. We can envision situations where damages have been incurred but where, for example, injunctive relief is moot by the time a tenant brings an action under the URLTA. To interpret a tenant's right to damages under § 76-1425(2) as contingent upon injunctive relief and injunctive relief as contingent upon an award of damages would allow landlords to fortuitously escape liability for breaches of § 76-1419. Such a reading would thus be contrary

---

[34] See "And," Merriam-Webster.com, https://www.merriam-webster.com/dictionary/and (last visited Mar. 27, 2019).

[35] Brief for appellants at 17.

[36] *In re Estate of Eickmeyer*, 262 Neb. 17, 628 N.W.2d 246 (2001).

to the purpose of the URLTA to encourage the landlord to maintain and improve the quality of housing.

We find that the complaint presents no insuperable bar to relief for any of the claimed breaches of the duties set forth by § 76-1419.

## Retaliation

We turn to tenants' cause of action for retaliation under § 76-1439. The complaint alleged that the rental property is still under a vacate order and that CHI, in retaliation for tenants' complaints to the Douglas County Health Department and the Housing Division, demanded tenants vacate or pay rent during periods they were unable to live on the premises. We hold that tenants thereby alleged sufficient facts to state a cause of action for retaliation under § 76-1439.

Section 76-1439 provides:

(1) Except as provided in this section, a landlord may not retaliate by increasing rent or decreasing services or by bringing or *threatening to bring an action for possession* after:

(a) The tenant has complained to a government agency charged with responsibility for enforcement of a minimum building or housing code of a violation applicable to the premises materially affecting health and safety[.]

. . . .

(2) If the landlord acts in violation of subsection (1), the tenant is entitled to the remedies provided in section 76-1430 and has a defense in action against him for possession . . . .

(3) Notwithstanding subsections (1) and (2), a landlord may bring an action for possession if:

(a) The violation of the applicable minimum building or housing code was caused primarily by lack of reasonable care by the tenant or other person in his household or upon the premises with his consent;

(b) The tenant is in default in rent; or

(c) Compliance with the applicable minimum building or housing code requires alteration, remodeling, or demolition which would effectively deprive the tenant of use of the dwelling unit.

The maintenance of the action does not release the landlord from liability under subsection (2) of section 76-1425.

Section 76-1430, referred to by § 76-1439, describes that

the tenant may recover possession or terminate the rental agreement and, in either case, recover an amount equal to three months' periodic rent as liquidated damages, and a reasonable attorney's fee. If the rental agreement is terminated the landlord shall return all prepaid rent and security recoverable under section 76-1416.

[13] Nothing in these sections requires a specific notice of termination of a rental agreement. CHI argues, and the district court seemed to believe, that termination under § 76-1439 cannot be recognized without a separate action for termination. It was undisputed that tenants did not recover possession. Neither §§ 76-1430 and 76-1439 nor any other provision of the URLTA indicates that a separate action for termination of a rental agreement is a prerequisite to termination under the URLTA. The only reference to maintenance of an action in the URLTA is the reference to an action for possession by the landlord against a tenant wrongfully in possession or by a tenant against another party wrongfully in possession.[37]

Other than setting forth the right to terminate a rental agreement under various sections already discussed and providing in § 76-1405(2) that "[a]ny right or obligation declared by the [URLTA] is enforceable by action unless the provision declaring it specifies a different and limited effect," the URLTA nowhere refers to an "action" for termination. Indeed, we have never recognized a separate cause of action for termination of a rental agreement, as such. To the contrary, in

---

[37] See § 76-1439.

the context of determining when the statute of limitations begins to run for actions for possession, we have referred to termination of a lease as arising as a factual matter pursuant to the provisions of the URLTA before any action has been brought.[38] Similarly, under common law, leases terminated automatically upon various defaults under self-executing contractual provisions without any action being required by lessor or lessee.[39] Statutes that effect a change in common law or take away a common-law right should be strictly construed, and a construction that restricts or removes a common-law right should not be adopted unless the plain words of the statute compel it.[40]

Tenants' complaint does not present an insuperable bar to relief under § 76-1439. Therefore, the district court erred in dismissing tenants' alleged fourth cause of action.

## Ouster

Finally, we find that the district court erred in concluding that tenants failed to state a claim for ouster in violation of § 76-1430. Section 76-1430 provides in relevant part that a tenant may take action "[i]f the landlord unlawfully removes or excludes the tenant from the premises or willfully and wrongfully diminishes services to the tenant by interrupting or causing the interruption of electric, gas, water or other essential service to the tenant . . . ." The allegations indicate that water services were interrupted as a result of plumbing repairs which were in progress. Tenants also alleged that CHI had unlawfully told them to vacate in October 2016 in retaliation for their reports to the Housing Division. These allegations do not demonstrate an insuperable bar to relief under § 76-1430.

---

[38] See *Blankenau v. Landess*, 261 Neb. 906, 626 N.W.2d 588 (2001). See, also, *Pollock v. Whipple*, 33 Neb. 752, 51 N.W. 130 (1892).

[39] See *Valentine Oil Co. v. Powers*, 157 Neb. 71, 59 N.W.2d 150 (1953).

[40] See *Tadros v. City of Omaha*, 273 Neb. 935, 735 N.W.2d 377 (2007).

## CONCLUSION

Accepting as true all facts that are well pled and the proper and reasonable inferences of law and fact that may be drawn therefrom, the complaint states plausible claims for relief under §§ 76-1419, 76-1430, and 76-1439 of the URLTA for retaliatory conduct, ouster, and failure to maintain fit and habitable premises, but not under §§ 76-1418 and 76-1426 for failure to deliver possession. We affirm the district court's order of dismissal as to tenants' first cause of action, but reverse as to their alleged second, third, and fourth causes of action.

AFFIRMED IN PART, AND IN PART REVERSED.